THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAY OATES, Defendant-Appellant.

Third District   No. 77-142

Opinion filed April 11, 1978.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Jay Oates appeals from convictions of reckless conduct and unlawful use of weapons following a jury trial in the Circuit Court of Tazewell County. Defendant was sentenced on the unlawful use of weapons conviction to a one-year term of probation, conditioned upon

the payment of a $500 fine and the service for a period of six months on work release. On appeal, defendant argues that the trial court erred in allowing the prosecutor to lead a witness called by him and to show the witness prior inconsistent statements made by him.

The record indicates that defendant Jay Oates and a co-defendant, Vince Umholtz, were tried jointly on charges of reckless conduct and unlawful use of weapons. Evidence was introduced indicating that defendant Oates was a passenger in an automobile driven by defendant Umholtz from which two shots were fired into the Pekin Dollarodeon Theater early in the morning of February 7, 1976. The State contended at the trial that defendant Oates either fired the shots himself or was accountable for the acts of the individual firing the shots. The evidence for the State also established that late in the evening of February 6, 1976, a companion of the defendant became involved in an altercation with the theater manager and that companion was subsequently arrested by the police in the presence of defendants Oates and Umholtz. The State presented four eyewitnesses who observed two shots fired from a blue Pinto driven by defendant Umholtz. Three other witnesses who observed the vehicle in the area near the time of the incident were also called. Testimony established that the vehicle was driven by Umholtz and that defendant Oates apparently occupied the front passenger seat and that a Dave Hill occupied the rear seat. The witnesses did not agree as to which of the occupants in the automobile fired the shots.

During the course of the trial, the State called a young man, Sherman Brubaker, who was present at the movie with the defendants, and who later observed defendants in the blue Pinto automobile. During the direct examination of Brubaker, the testimony of that witness at certain points conflicted with statements he had given to the police on February 17, 1976. Brubaker testified that shortly after 1 a.m. on February 7, 1976, he had a conversation with defendant Oates and Dave Hill in the theater lobby, and that defendant had told Brubaker that Oates and Umholtz were "probably going to take off and maybe come back." Further questioning regarding this conversation elicited objections by the defense. An in chambers hearing was then held in which the court granted the State limited authority to lead or refresh the recollection of the State's witness Brubaker. Brubaker was then examined in this manner outside the jury. When the testimony was resumed before the jury, Brubaker testified, when asked what defendant Oates had said in the lobby, that Oates had said "he might go get a gun or something."

The following testimony before the jury was also apparently consistent with the statement given by Brubaker to the police until he was questioned concerning the color of handlegrips on a gun belonging to defendant Oates' brother, a gun which defendant Oates had shown to

Brubaker at his brother's apartment. The State's Attorney asked Brubaker to refresh his recollection based upon his prior statement to the police, and after Brubaker's recollection was refreshed, he testified that the gun had white grips on the handle. No evidence was presented by Oates' defense.

Following closing arguments of counsel, the jury found defendant Oates and his co-defendant Umholtz guilty of reckless conduct and unlawful use of weapons. Following a sentencing hearing, the trial court sentenced both defendants to terms of one-year probation, conditioned upon payments of a $500 fine and service of six-months in work release.

■■■ On appeal in this court, defendant Oates argues that the trial court erred in allowing the State to lead or refresh the recollection of Brubaker, who was called as a witness by the State, and to permit the witness to refresh his recollection by a prior inconsistent statement which he had given to the police. As stated in *People v. Grant* (1st Dist. 1976), 38 Ill. App. 3d 62, 66, 347 N.E.2d 244:

> "It is well established that a party calling a witness vouches for his credibility and may not impeach him except as results incidentally from proving a state of facts differing from that sworn to by the witness. [Citations.] However, where a witness gives surprising testimony adverse to the party calling him, that party may be permitted to refresh the recollection of the witness through the use of prior statements. The general rule was clearly stated in *People v. Michaels*, 335 Ill. 590, 592, 167 N.E. 857, 858:
>
>> 'The rule is, that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying.' "

In the instant case, Brubaker was called as a State's witness and testified at one point that Oates had, on a prior occasion, shown Brubaker a gun with black handgrips. The State had introduced at the trial, a gun which had been taken from Dave Hill (the third occupant of the blue Pinto automobile) when Hill was placed under arrest. That gun apparently had white handgrips. The testimony of Brubaker as to the color of the handgrips was inconsistent with his prior statement to the police. Brubaker was permitted to refresh his recollection by examining a copy of the prior statement to the police and corrected his testimony regarding the color of the handgrips. The statement by which his recollection was refreshed was not introduced as substantive evidence. On the basis of the

cited precedent, we conclude that the trial court properly permitted the refreshing of Brubaker's recollections by calling his attention to prior inconsistent statements by the witness.

The argument of defendant Oates also contends that the trial court improperly allowed the State to lead the witness Brubaker. We observe, however, that while the trial court did grant the State limited authority to lead Brubaker in questions concerning the witness's conversation with defendant Oates in the movie lobby (outside the presence of the jury) the witness did testify before the jury, in response to nonleading questions, that defendant Oates had said he "might go get a gun or something." We believe the ruling of the trial court was proper on this issue. As stated in *People v. Williams* (1st Dist. 1976), 37 Ill. App. 3d 1006, 1010, 347 N.E.2d 368:

> "The propriety of allowing leading questions is within the sound discretion of the trial court and is not a ground for reversal unless the court abused that discretion and the abuse of discretion resulted in substantial injury to the defendant."

We note from the record that the trial judge in the instant case, at the time of the examination of Brubaker, admonished the witness to tell the truth and permitted the questions for the purpose of refreshing the witness's recollection, outside the presence of the jury, prior to the testimony of the witness before the jury. Testimony of other witnesses placed the defendants in the Pinto and also established that shots were fired from the Pinto into the theater.

■■ Reviewing the issues in the instant case with respect to Brubaker's testimony, it is apparent that little substantive evidence, if any, was elicited from Brubaker in response to leading questions in front of the jury, in permitting Brubaker to refresh his recollection. We conclude that the trial court did not abuse its discretion in permitting the State to ask questions relating to Brubaker's prior statement outside the presence of the jury and, further, to refresh his recollection as to the description of the handgrips.

For the reasons stated, therefore, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

BARRY, P. J., and SCOTT, J., concur.