(No. 19523.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES MICHAELS, Plaintiff in Error.

*Opinion filed June 19, 1929—Rehearing denied October 5, 1929.*

William Baer, J. Fred Gilster, and H. J. Bandy, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, H. C. Lindauer, State's Attorney, and George P. O'Brien, (William H. Schuwerk, John Thomas, and James H. Farmer, of counsel,) for the People.

Mr. Justice Heard delivered the opinion of the court:

Plaintiff in error, James Michaels, was indicted, tried, convicted and sentenced to the penitentiary, in the circuit court of Randolph county, for the crime of robbery when armed with a deadly weapon. The record of the cause is now before this court upon writ of error.

About midnight of October 10, 1925, two men entered the freight office of the Illinois Central Railroad Company at East St. Louis, intimidated the employees with a show of revolvers, forcibly opened the safe and escaped with $2875.15. Between 1:00 and 2:00 A. M. of the same night plaintiff in error was arrested at his home in East St. Louis, where he lived with his wife. On the following morning he was viewed by the six employees of the railroad company who had been present at the commission of the robbery. On the trial three of the employees, Joseph Huber, Albert Hall and Henry Davis, identified plaintiff in error as one of the robbers; two of the employees, Thomas McHugh and Elmer Hill, testified that plaintiff in error was not one of the robbers, while the other employee, John Manion, testified that he did not think he was one of them. Plaintiff in error testified that during the entire evening, until the time of his arrest, he had been at home alone with his wife and that no person other than his wife had been there during that time. The prosecution introduced in evidence an affidavit for a continuance made by plaintiff in error, in which he stated that at the time of the commission

of the supposed robbery he was at home, and that Herman Tipton came there about 9:30 P. M. and remained there until 1:30 A. M., and that if Tipton were present in court he would testify to that fact. Tipton was not called as a witness.

Manion was the first witness called by the prosecution. After he had stated that he did not think plaintiff in error was one of the robbers, he was shown a statement made by him before the grand jury and other statements signed by him and was asked to read them, but not aloud, and was asked if these statements did not refresh his recollection. It is claimed by plaintiff in error that a party cannot impeach a witness called by him by proving that the witness has on some other occasion made a statement different from the one he makes in court. The prosecution did not offer in evidence the statements made by the witness, but at the time of their exhibition to the witness the State's attorney, in a colloquy which took place between the court and the counsel for both sides, stated that the testimony of the witness was a surprise to the State; that he was not offering the statements but was showing them to the witness for the purpose of refreshing his recollection. The rule is, that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying. If, however, the witness denies the alleged statements the party calling him must be concluded by his answers, and cannot show, either by the written statements of the witness or by other witnesses, that the witness did, in fact, make those statements, either for the purpose of impeachment or as original evidence of the facts sought to be proved. He may, however, prove by other witnesses the

facts sought to be proved by the witness giving such unexpected testimony. *People* v. *O'Gara,* 271 Ill. 138; *People* v. *Lukoszus,* 242 id. 101; 1 Greenleaf on Evidence, sec. 444.

Manion in his testimony stated that on the morning after the robbery, at the police station, he did not state, in the presence of plaintiff in error, that plaintiff in error was the man who had committed the robbery. The State was allowed to prove by one of the other witnesses who were present that Manion said, in the presence and hearing of plaintiff in error, "He is the man," and that plaintiff in error made no reply thereto. It is contended by plaintiff in error that the admission of this evidence was error. Manion in one portion of his testimony stated that he identified plaintiff in error at that time. While Manion denied making the statement that plaintiff in error was the man, the State was not precluded thereby from proving by other witnesses what was said in the presence and hearing of plaintiff in error. In *People* v. *O'Donnell,* 315 Ill. 568, it was held that in a prosecution for robbery the prosecution may prove by witnesses who were present that the party robbed said, "That is the man," in identifying the robbers when they were brought before him shortly after the commission of the crime, where the party accused did not deny the statement.

The witness Hill, who testified as a witness for defendant and stated that defendant was not one of the men who committed the robbery, on cross-examination was asked the question, "You were discharged?" to which he answered, "No, sir." This was objected to by plaintiff in error and the objection was sustained. Hill was then asked the question, "I will ask you, Mr. Hill, if it is not a fact you had been arrested, shortly after, in connection with this offense or charge?" This question was objected to and the objection sustained.

During the cross-examination by the State of McHugh, a watchman for the railroad company, who was present at the time of the robbery armed with a revolver but made no attempt of any kind to resist the robbers, the following colloquy took place:

Q. "You did not try to protect your employer's money?

A. "No.

Q. "You didn't do anything to protect your employer's money?

A. "Not a thing. (Defendant objects and asks that cross-examination be limited to what was brought out on direct.)

The court: "You asked him what his employment was. You opened the door.

Q. "You were there as a watchman?

A. "That is right. (Defendant objects on the ground of repetition; objection sustained.)

Q. "You have been discharged?

A. "Yes, sir.

Q. "I will ask you, Mr. McHugh, whether it is not a fact you were discharged from the company because you were— (Defendant objects. The reason he was discharged was immaterial.)

The court: "Sustained."

It is claimed by plaintiff in error that this constituted reversible error. On the cross-examination of an interested or hostile witness for the purpose of showing his bias or prejudice, large discretion is committed to the trial court in controlling the cross-examination, (*People* v. *Todd,* 301 Ill. 85,) and in the instant case the objections of plaintiff in error were largely sustained and plaintiff in error could not have been prejudiced thereby.

The cashier of the railroad company testified that among the property stolen were $47 in half-dollars, $44.25 in quarters, $16.30 in dimes, $9.30 in nickels, $4.33 in pennies, and twenty-eight United Railway tokens. After plaintiff

in error's arrest his home was illegally searched and property taken therefrom by the officers. Prior to the commencement of the trial plaintiff in error made a motion that all the evidence seized and obtained by means of such illegal search be suppressed. The court did not allow the officers to testify as to any property found by them while making such illegal search. During the cross-examination of plaintiff in error the following took place:

Q. "I will ask you whether you had in your home— you lived there along with your wife and family? (Objected to by defendant.)

The court: "It all depends upon what the question is.

Q. "I will ask you whether you did not have in your possession— (Objected to by the defendant.)

The court: "I don't know what it is he is going to ask.

Q. "$47 in halves, $44.25 in quarters, $16.30 in dimes, and $9.30 in nickels, and $4.33 in pennies and twenty-seven United Railways tokens? (The defendant again objected and the objection was sustained.)"

It is claimed by plaintiff in error that the asking of these questions was such misconduct as to constitute reversible error. In his brief he states: "The vice was in the asking of this palpably incompetent question, which destroyed the entire effect of the court's previous ruling that what was found and seized in plaintiff in error's home was, because of the illegal character of the search, not competent evidence. Of what avail was the court's protection of plaintiff in error's rights under the constitution in the face of such a question?" Neither the evidence in the case nor the motion to suppress discloses what property was obtained by the illegal search and seizure, and we cannot assume that the property illegally seized by the officers was the money mentioned in the question. Plaintiff in error had testified as a witness and denied any complicity in the robbery. It was competent for the State's attorney, on cross-examination, to elicit from him, if he could, that immediately after

the commission of the crime he had in his home the property taken from the railroad company. Had he answered the question denying the possession of the money, the police officers who had illegally searched his home and seized his property could not have testified in rebuttal for the purpose of impeaching him.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*