THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY McCOY, Defendant-Appellant.

(No. 59803; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

First District (2nd Division)—February 18, 1975.

*Supplemental opinion upon rehearing filed June 10, 1975.*

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Laurence J. Bolon, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM:

On December 17, 1970, the defendant, Larry McCoy, pleaded guilty to robbery and was placed on 5 years' probation on the condition that he serve the first year in the Cook County Jail. On July 2, 1973, following a hearing, the defendant's probation was revoked and he was sentenced to not less than 5 nor more than 15 years in the Illinois State Penitentiary. (Ill. Rev. Stat. 1969, ch. 38, par. 18—1.) On appeal, he contends that the sentence was excessive and that the trial court should have initiated

proceedings under the Dangerous Drug Abuse Act. Ill. Rev. Stat. 1973, ch. 91½, par. 120.1, *et seq.*

On December 17, 1970, when the defendant's plea of guilty to robbery was accepted, the court specifically admonished the defendant that if there was a violation of probation, he would sentence the defendant to "from ten to twenty" years in the penitentiary. A warrant for violation of probation was issued on July 6, 1972, based upon the report of the probation officer that the defendant had never reported to his probation officer as required by the conditions of probation and that he was scheduled to appear in court on August 7, 1972, to answer charges of theft and resisting arrest. At the hearing on July 2, 1973, defendant, through his counsel, stipulated that on April 4, 1973, he had been convicted of theft and sentenced to 10 days in the House of Correction, and that since January of 1973 he had failed to report to the probation officer. The issue at the probation revocation hearing, therefore, was not whether the defendant had violated the terms of his probation, but whether the court should reinstate the defendant's probation. In support of his position, defendant's counsel stated that the defendant was "a drug addict." At the beginning of the hearing defense counsel stated that a representative of the Day One Illinois Drug Abuse Program was present in court and the case was passed so that the counselor could talk to the defendant. When proceedings were resumed, defendant's counsel asked the court to place the defendant "with strict control in Tinley Park, another part of the Illinois Drug Abuse Program." Defendant also addressed the court and asked if the judge "would probate" him "to Tinley Park." The counselor also addressed the court in an attempt to explain the program.

The State's attorney indicated that the defendant had never reported to his probation officer, and that his prior record consisted of the following: 1969, resisting a peace officer, fined $60; August 26, 1969, indecent liberties, sentence of 6 months to Vandalia; December 3, 1969, theft, 1 year probation; December 17, 1970, robbery, 5 years' probation, first year in the Cook County Jail; August 28, 1971, Detroit, Michigan, possession of dangerous drugs, 1 year probation, fine of $175; March 7, 1972, theft, 30 days in the House of Correction. The defendant, however, contested the second item, saying he was never sentenced and did not serve 6 months in Vandalia.

The court, after reading at length from the transcript of the December 17, 1970 hearing at which he had promised to sentence the defendant to 10 to 20 years, sentenced him to 5 to 15 years in the Illinois State Penitentiary. In response to the pleas of the defendant, his counsel, and the counselor, that the defendant be placed on the drug treatment program,

the court said: "They have a program in the penitentiary just for the type of programs you are talking about."

This case involves interpretation of the following language of section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.10):

> "If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8, the court may advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department. In offering an individual an election, the court shall advise him that (a) if he elects to submit to treatment and is accepted he may be placed on probation and under the supervision of the Department for a period not to exceed the maximum sentence that could be imposed for his conviction or 5 years, whichever is less; (b) during probation he may be confined in an institution or, at the discretion of the Department, he may be released for supervised aftercare treatment in the community; and (c) if he adheres to the treatment program and fulfills the other conditions of probation, he will be discharged, but any failure to adhere to the treatment program is a breach of probation. The court may certify an individual for treatment while on probation under the treatment supervision of the Department and probation supervision of the proper probation authorities regardless of the election of the individual.
>
> *If the individual elects to undergo treatment or is certified for treatment, the court shall order an examination by the Department to determine whether he is an addict and is likely to be rehabilitated through treatment."* (Emphases added.)

The statute clearly states that the psychiatric examination by the Department of Mental Health is mandatory once either of two events occur: either the defendant makes an election under the Act or the court certifies him for treatment. Although the defendant in the case at bar did not file a written petition asking that the procedures under the Act be initiated, and although the statute was not referred to specifically in the trial court, we think a strong argument can be advanced that the defendant did attempt to exercise an election within the meaning of the Act.

In *People v. White* (1973), 10 Ill.App.3d 566, 294 N.E.2d 699 (abstract opinion), we held that a psychiatric examination was mandatory if the defendant elected to be treated under the Act, but in *White* the only

factual basis for the defendant's contention that he elected treatment was the following brief exchange during the hearing in mitigation:

"DEFENSE COUNSEL: Do you want to get on a program?

DEFENDANT: Yes sir."

Although recognizing that there were circumstances that might require the court on its own motion to initiate the Act's procedure, we there stated in concluding that this exchange did not constitute an election under the Act, the following:

"Nothing in the Act supports a view that an election by a defendant to enter the program could be taken lightly. We therefore believe that something more than the above brief comment was required to exercise the 'election' contemplated by the Act. Defendant's answer to his counsel's leading and general question did not indicate that he had considered or even contemplated such an election. It is difficult to imagine any individual embarking on such a serious course of action, including as it did, a compulsory psychiatric examination and perhaps months of confinement in a mental hospital, without expressing his intention to do so clearly and unequivocally."

In *People v. Robinson* (1973), 12 Ill.App.3d 291, 292, 297 N.E.2d 621, the court held that if the individual elects to undergo treatment, "* * * the court must order an examination by the Department of Mental Health to determine if he is an addict and likely to be rehabilitated through treatment." In that case we recognized that the failure to follow the procedures set out in the statute appeared "* * * to have been unintentional due to a lack of information concerning the Act on the part of all parties," as seems to have happened in the case at bar. 12 Ill.App.3d 291, 294.

In *People v. Clinkscale* (1973), 14 Ill.App.3d 226, 302 N.E.2d 181, the trial court did initiate proceedings under the Act and ordered a psychiatric examination of the defendant, but then refused the defendant entrance into the program and instead sentenced the defendant to concurrent penitentiary terms of 6 to 10 years for burglary and 1 to 5 years for attempt burglary. A major reason for the trial court's action was that the defendant, like the defendant here, was originally placed on 5 years' probation on condition that he spend a year on the work release program at the House of Correction, but the defendant left the House of Correction and did not return. It was only when his probation was being revoked that he filed a petition under the Act. The State argued that since the defendant's probation was properly revoked, he was ineligible for treatment under the Act, a contention which the appellate court specifically rejected. The court also pointed out that the defendant was

admitted to probation on November 12, 1970, prior to the effective date of the Dangerous Drug Abuse Act (July 1, 1971), and, therefore, concluded that the defendant never had a proper opportunity of electing to come within the provisions of the Act. Finally, the appellate court stated that the trial court should have determined whether or not the "appropriate parole or probation authority" consented to the defendant's election to be treated under the Act or not, a point on which the record in *Clinkscale* was equivocal. While *Clinkscale* speaks to whether the defendant should be admitted to the treatment program, rather than to whether the procedure should be initiated at all, the factors enunciated in *Clinkscale* are relevant to whether the procedure would be initiated at all.

Given all the circumstances, we think a strong argument can be made that the defendant and his counsel were in fact seeking to exercise the defendant's right to make an election under the Dangerous Drug Abuse Act. Although a written petition would be the more desirable procedure, we think it is clear from the fact that a representative of the Illinois Drug Abuse Program was present in court, spoke to the defendant, and also addressed the court, and from the fact that both the defendant and his counsel referred specifically to "Tinley Park," a State mental hospital, that the defendant was attempting to make an intelligent election under the Act. The facts here are much different from those in *White*, where there was merely a brief reference to a "program." Since, under the rationale of *Clinkscale*, the defendant was not ineligible for treatment under the Act merely because his probation was being revoked, the trial court should have initiated the procedures under the Dangerous Drug Abuse Act by ordering the defendant to be examined by the Department of Mental Health as provided in section 10 of the Act.

We, of course, express no opinion concerning whether the defendant should be admitted to the program, a decision which will be within the sound discretion of the trial judge once he has received the reports of the Department of Mental Health and the views of the appropriate parole or probation authorities. (See *People v. Dill* (1974), 23 Ill.App.3d 503, 319 N.E.2d 240.) Accordingly, the sentence is vacated and the cause is remanded to the circuit court of Cook County for further proceedings under the Dangerous Drug Abuse Act not inconsistent with the views expressed herein.

Sentence vacated; cause remanded.

## SUPPLEMENTAL OPINION

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

The State filed a petition for rehearing pointing out that since the defendant was convicted of a crime of violence, to wit: robbery, section 8 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*), precluded the trial judge from further proceedings under the Act. In its original brief before this court, the State did not raise this contention.[1] Nevertheless, pursuant to Supreme Court Rule 367 (Ill. Rev. Stat. 1973, ch. 110A, par. 367), we granted the petition. Thereafter defendant filed his answer to the petition and the State its reply brief.

Section 8 of the Act reads in pertinent part:

> "An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of the Department instead of prosecution or probation, as the case may be, unless (a) the crime is a crime of violence   *   *   *."

Thus the critical question to be resolved is whether the defendant's conviction of robbery constitutes a *crime of violence* under section 8. On December 17, 1970, the defendant was initially placed on probation upon his entering a plea of guilty to the charge of robbery.

As enacted in 1967, the Act defined a crime of violence, so far as pertinent, in section 3.08 as:

> " 'Crime of violence' means all offenses defined as forcible felonies in Section 2—8 of the Criminal Code of 1961[2] except for burglary   *   *   *."

Section 2—8 of the Criminal Code defined a forcible felony as:

> " 'Forcible felony' means treason, murder, voluntary manslaughter, rape, *robbery,* burglary, arson, kidnapping, aggravated battery and any other felony which involves the use or threat of physical force or violence against any individual." (Emphasis supplied.)

Thus as originally enacted, the crime of robbery was included as a crime of violence. Therefore, a person convicted of robbery was not eligible for treatment under the Dangerous Drug Abuse Act.

Effective January 1, 1973 (P.A. 77-2478), the statutory definition of

---

[1] Although this question is raised for the first time by the State in its petition for rehearing and defendant, relying on *People v. Mallett* (1970), 45 Ill.2d 388, 259 N.E.2d 241 urges the doctrine of waiver, we believe a review on the merits is justified.

[2] Ill. Rev. Stat. 1961, ch. 38, par. 2—8.

a "crime of violence" (Ill. Rev. Stat. 1973, ch. 91½, par. 120.3—8) was amended so as to read:

> " 'Crime of violence' means the following crimes: treason, murder, voluntary manslaughter, rape, armed robbery, arson, kidnapping, aggravated battery, and any other felony which involves the use or threat of physical force or violence against another individual."

By specific legislative action, the crime of robbery was not enumerated amongst those crimes causing ineligibility for treatment. This was the state of the law at the time defendant was sentenced on July 2, 1973. The State strongly urges the following language in section 3.08: "* * * and any other felony which involves the use or threat of physical force or violence against another individual" must include the crime of *robbery*. The State says robbery[3] (Ill. Rev. Stat. 1973, ch. 38, par. 18—1(a)) "has as an element of the offense the use of force or the threatened imminent use of force." Therefore the State says the broad umbrella contained in the above-quoted language in section 3.08 must cover "robbery."

On the other hand the defendant contends "[a] statute of this nature is interpreted under the doctrine of *ejusdem generis*." (See *People v. Capuzi* (1960), 20 Ill.2d 486, 493-94, 170 N.E.2d 625.) This doctrine suggests that, where a statute specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration (as here) are "other" persons or things, if the legislature had intended that the general words apply without restriction, it would have omitted the specific enumerations.

■■ It is the duty of the court to interpret the statute as it is, regardless of the court's own opinion as to the desirability of the results stemming from that interpretation. (*Belfield v. Coop* (1956), 8 Ill.2d 293, 306-07, 134 N.E.2d 249.) It is a cardinal rule that a statute must be construed so as to ascertain and give effect to the legislative intent as expressed in the statute. (*People ex rel. Kucharski v. Adams* (1971), 48 Ill.2d 540, 543, 273 N.E.2d 7.) Generally, the words used in a statute should be given their plain, ordinary and commonly accepted meaning. *People ex rel. Carruthers v. Cooper* (1949), 404 Ill. 395, 399-400, 89 N.E.2d 40.

Of course it is fundamental that the mention or enumeration of one or more certain things in a statute excludes all other things not mentioned in the statute. (*City Savings Association v. International Guaranty & Insur-*

---

[3] Section 18—1(a) of the Criminal Code defines robbery: "A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

*ance Co.* (1959), 17 Ill.2d 609, 612, 162 N.E.2d 345.) Thus it can be strongly urged here that when the legislature expressly included, in section 3.08, eight specific crimes as a "crime of violence" and did not include *robbery*, the legislature did not intend to characterize *robbery* as a crime of violence. This is especially persuasive when under the previous statutory scheme, the crime of robbery was included. However, the legislature in amending section 3.08, after enumerating the eight felonies, also added, "* * * and any other felony which involves the use or threat of physical force or violence against another individual." In our opinion, section 3.08 is susceptible of more than one construction, and, we should under such circumstances give the construction which will effectuate or carry out the purpose of the legislation, even though such construction is not within the strict literal interpretation of the statute. *Kloss v. Suburban Cook County Tuberculosis Sanitarium District* (1949), 404 Ill. 87, 96, 88 N.E.2d 89.

Our review of the legislative action leads us to conclude the general assembly chose to exclude the crime of robbery when the crime of robbery was omitted from the enumerated list of crimes defined as a crime of violence. The specific act of striking the crime of robbery from the list of crimes of violence, in our opinion, is persuasive of legislative intent.[4] The argument of the State that the elements of the crime of robbery clearly classify that felony as a crime of violence, is an understandable argument. But that plea should be directed to the general assembly for their determination as to whether robbery should be listed in section 3.08 as a crime of violence.

In our original opinion, we pointed out that in the remand of this cause, the trial judge, after a proper hearing, is free to exercise his sound discretion as to what disposition is appropriate. This subject was reviewed in our recent opinion of *People v. Mills*, 29 Ill.App.3d 582, —— N.E.2d ——.

■■ We adhere to our original decision in this matter of vacating the sentence and remanding the cause to the circuit court of Cook County for further proceedings under the Dangerous Drug Abuse Act not inconsistent with the views expressed therein.

Sentence vacated; cause remanded.

STAMOS and HAYES, JJ., concur.

---

[4] The Dangerous Drug Abuse Act, effective August 16, 1971, had as a part of its legislative purpose "* * * to provide diagnosis, treatment, care and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community." Ill. Rev. Stat. 1973, ch. 91½, par. 120.2.