THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HOVANEC, Defendant-Appellant.

First District (1st Division)    No. 62325

Opinion filed June 21, 1976.

Jar 1es R. Streicker and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for t 1e People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Robert Hovanec, was indicted for voluntary manslaughter, attempted murder and aggravated battery. After a trial by jury, defendant was convicted only of the aggravated battery charge. Defendant's grounds for appeal are that the trial court erred in permitting a courtroom demonstration and that the misconduct of the prosecutor denied defendant a fair trial.

Because we reverse and remand for a new trial due to the misconduct of the prosecutor, we need not discuss the first claim of error.

Briefly stated, the facts are: at approximately 2 a.m. on April 12, 1974, defendant and Andrew Gurin, who was indicted on the same charges, stepped into the doorway of a building to avoid the rain. Shortly thereafter the victims, William Swiatek and William Fandl, entered the same doorway. There was some conversation about the weather at first, but accounts differ as to what occurred next. Defendant testified that Fandl started calling him names and then started hitting him. Defendant also claimed that Gurin had fallen asleep in the doorway. Fandl and Gurin testified that after the small talk Fandl and Swiatek left and started to cross the street when defendant called Fandl a name and then chased after him and started hitting him. Gurin said Swiatek told him to stay where he was, but Gurin ran out and started struggling with Swiatek. Gurin broke free and ran to his house a short distance away and returned with a knife from his kitchen. Upon his return, Fandl and Swiatek were holding defendant against a stairway. Defendant grabbed the knife and stabbed Fandl and Swiatek. Swiatek later died as a result of the stab wounds. Gurin pled guilty to simple battery and received two years' probation. Defendant was sentenced to three to ten years in the penitentiary after his conviction on the aggravated battery charge.

The specific acts of the prosecutor of which defendant complains were the repeated offers by the prosecutor, in the presence of the jury, to stipulate to a pre-trial statement by Gurin, several attempts by the prosecutor to elicit other pre-trial statements made by Gurin after objection to these questions had been sustained, and the closing argument by the prosecutor wherein he stated that defendant had hidden evidence from the jury, misled the jury and that defendant was a well-coached witness. The State contends defendant was not denied a fair trial because

the State's objections regarding the pre-trial statements were overruled, the defendant's objections were sustained, the prosecutor was admonished and the jury was properly instructed. The State claims that if the conduct of the prosecutor had any effect on the trial, it reflected adversely on the State, that the evidence of defendant's guilt was overwhelming and further, if the conduct of the prosecutor was improper, there was no substantial prejudice to defendant by it and therefore reversal is not warranted. The State does not, and we believe could not, argue that the prosecutor's conduct was proper. The State's only citation of authority is to cases holding that substantial prejudice to defendant must be shown before reversal will be necessary.

A more elaborate statement of the prosecutor's conduct is necessary. The day after the incident, Gurin gave a statement to the police. After the prosecutor extensively questioned Gurin about the genuineness of the statement shown to Gurin in court, the prosecutor asked Gurin to read it. When an objection was made that the prosecutor appeared to be trying to impeach his own witness, the prosecutor said, "Judge, I believe him. That is why I want these people to know." The objection was sustained and both attorneys' comments were stricken. On cross-examination of Gurin, defense counsel attempted to show inconsistencies between Gurin's in-court testimony and his pre-trial statement. The prosecutor objected with the remark, "Object to him taking statements out of context. Stipulate to the entire statement." After defense counsel asked more questions, the prosecutor again said the questions were out of context and again offered to stipulate to the entire statement. After further cross-examination of Gurin, the same thing occurred for the third time. The prosecutor said, "Objection. Again offer to stipulate to the entire statement so that the jury can have an idea of what exactly the statement was." On redirect, the prosecutor asked Gurin, "This statement contains a lot of other questions and answers you weren't asked about today, right?" On recross, twice the prosecutor again repeated his offer to stipulate to the entire statement.

■■ This was highly improper. The practice of one litigant offering evidence or offering to stipulate to evidence in the presence of the jury, thereby forcing the opponent to object or allow its admission or else to appear to be hiding something unfavorable from the jury, has been repeatedly condemned. *Paliokaitis v. Checker Taxi Co.* (1944), 324 Ill. App. 21, 26, 57 N.E.2d 216; *Smith v. Johnson* (1954), 2 Ill. App. 2d 315, 319, 120 N.E.2d 58; *Moore v. Daydif* (1955), 7 Ill. App. 2d 534, 541, 130 N.E.2d 119; *People v. Beard* (1966), 67 Ill. App. 2d 83, 91, 92, 214 N.E.2d 577.

■■ In addition, after Gurin had testified, the State called Chicago Police Officer Edward Kodatt, who had arrested Gurin. Gurin had made two statements to Officer Kodatt. The prosecutor persisted in asking

Kodatt clearly objectionable questions in an effort to elicit Gurin's statements. The prosecutor asked the same basic question five times and each time the court sustained an objection to it. The prosecutor should have known the question was objectionable before he asked it the first time. However, the more reprehensible conduct was the persistent asking of the question after an objection to it had been sustained. (*Gregory v. Richey* (1923), 307 Ill. 219, 229, 231, 138 N.E.2d 669.) There can be little doubt that the prosecutor was again attempting to make it appear to the jury that defendant was trying to keep unfavorable evidence from them.

■■ The prosecutor's conduct during closing argument further emphasized the impression that defendant was hiding something from the jury. After referring to Gurin's statement, the prosecutor stated, "You have heard us numerous times try to introduce the statement into evidence." A defense objection was sustained, but the prosecutor continued this tactic later in the argument. After referring to Kodatt's testimony, the prosecutor said, " * * * when I asked Officer Kodatt to tell you what Gurin told him on the night of the incident he is the person that kept it from you, not me." Again an objection was sustained, but the prosecutor almost immediately continued the same line of argument:

> "In fact, when I gave Mr. Gurin this statement and asked him to read it to you, he is the one—
> Mr. Silverman: Objection, Judge.
> Mr. Smierciak: (continuing) —that kept the statement's contents away, not me."

After being admonished by the court for repeating the same objectionable statements, the prosecutor still refused to stop. He immediately said to the jury, "So, who has something to hide? * * *" and then went on to make the same comments in regard to a pre-trial statement made by Fandl.

The remarks that the jury was not allowed to hear certain evidence because of defendant's objections were utterly improper and have been repeatedly held to be reversible error. See *Anderson v. Universal Delta* (1967), 90 Ill. App. 2d 105, 111, 234 N.E.2d 21, and cases cited therein.

Other improper statements were also made by the prosecutor during closing argument, including an accusation that the defense counsel had deliberately tried to mislead the jury and that defendant had been a well-coached witness who engaged in theatrics on the stand. Similar arguments have been criticized in *People v. Stock* (1974), 56 Ill. 2d 461, 472, 309 N.E.2d 19, and *People v. Jackson* (1974), 24 Ill. App. 3d 700, 708, 321 N.E.2d 420.

These were not inadvertent errors. They were severely prejudicial and far exceeded the bounds of proper conduct. (*People v. Stock* (1974), 56

Ill. 2d 461, 471, 309 N.E.2d 19.) We cannot say that they did not contribute to defendant's conviction. *People v. Weathers* (1975), 62 Ill. 2d 114, 120-121, 338 N.E.2d 880.

The judgment is therefore reversed and the cause is remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

GOLDBERG, P. J., and SIMON, J., concur.