THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND HAINLINE, Defendant-Appellant.

Fourth District   No. 15446

Opinion filed October 12, 1979.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Adams County, defendant, Raymond Hainline, was found guilty of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) and theft after a previous theft conviction (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(1)). Defendant was sentenced to 5 years' imprisonment for the burglary and a concurrent 2-year term for the theft.

On appeal, defendant asserts (1) his right to a fair trial was denied when the prosecutor cross-examined him regarding whether the State's witnesses, whose testimony conflicted with his, were lying, (2) if his trial counsel waived error in the foregoing, he was deprived of his right to effective assistance of counsel, and (3) the trial court improperly submitted to the jury Illinois Pattern Jury Instruction, Criminal, No. 13.21 (1968) (hereinafter IPI Criminal) which permits the jury to make an inference of guilt from the defendant's unexplained possession of recently stolen property. We conclude that reversible error did not occur and, accordingly, we affirm.

Our determination is dependent partially upon the strength of the evidence presented at trial. It indicated that the Fix-It Shop in Quincy, Illinois, had been entered sometime after closing on April 5, 1978, and that a Zenith color television set valued at $145 had been stolen. The evidence indicated that entry was gained through the shop's rear door which was usually bolted from the inside. There was no evidence of any forced entry.

Harold Stark, an employee of the Fix-It Shop, testified that he was in the repair shop all day April 5 and that defendant came into the shop a few minutes before closing. At this time, Stark was drinking beer and watching the television which was later stolen. Stark stated that he offered defendant a beer and that defendant went to the rear of the shop to get the beer while Stark remained in the front. Soon afterwards, defendant asked for another beer and while defendant was getting another, Stark noticed that defendant had not finished the first one. At some point, defendant went to the rear of the shop a third time to use the restroom. Stark finally testified that he closed the shop between 5:30 and 5:45 p.m. and gave defendant a ride to the Labor Temple.

Glen Curley testified that on April 5, 1978, he purchased the television

set in question for $60 at Joe's 600 Club. Curley stated defendant arrived at the club around 6:30 or 7 p.m. and that defendant had asked if anyone wanted to buy a television set for $60. Curley borrowed the money from his cousin, Terry Powell, and purchased the set from defendant. Curley further testified that he saw no one else in the 600 Club that evening trying to sell a television set. Terry Powell corroborated Curley's testimony, saying that he thought the purchase took place between 7 and 8 p.m.

Morse White, a detective from Quincy, testified that he was involved in the investigation of the burglary of the Fix-It Shop and that he eventually took defendant into custody. Officer White testified that when he went to defendant's home and told him that he wanted to talk to him about the television set he had sold, defendant responded that he did not know the television set was "hot." Officer White further testified that when defendant was later questioned at the police station and after waiving his rights, he told the officers that he had purchased the TV from a man in the 600 Club on the same night that he had been in the Fix-It Shop talking to Harold Stark.

People's Exhibit No. 2, the Zenith television set, was admitted into evidence after Al Jochem, the consignor of the set, Ron Ancell, the consignee of the set, Harold Stark, Glen Curley, and Terry Powell identified it as the set which had been stolen and resold in the 600 Club. These witnesses testified that the set had not been damaged.

Defendant testified on his own behalf. He stated that on April 4, 1978, he met John Embree and Larry Orme at the 600 Club at approximately 7 p.m. and that sometime that evening a young man came into the club yelling that he had a television set for sale. Defendant stated that he did not know this man but that he made arrangements for the man to bring the television set to the club the next evening between 8 and 8:30 p.m. Defendant's testimony concerning the events of April 4, 1978, were corroborated by the testimony of John Embree.

Defendant testified that he did go to the Fix-It Shop the next day between 4:30 and 4:45 p.m. but that he had not drunk any beer and had not gone into the back of the shop as Harold Stark had earlier stated. Defendant testified that he went to the 600 Club at about 7 and that between 8 and 8:30 p.m. he saw the man whom he had seen the night before. After going outside to look at the television set, defendant purchased it for $10. Later that evening, defendant sold the set to Terry Powell for $50. Defendant stated that the channel selector knob on this television set was missing. Defendant denied saying that the television was "hot" when Officer White came to his house.

■■ Defendant's first two claims of error arise from the prosecutor's asking him on cross-examination whether certain prosecution witnesses, whose testimony conflicted with his, had been lying. Defendant's trial

counsel neither objected to these questions nor to closing argument in which the prosecutor referred to the defendant's statements that various State's witnesses were lying nor did he file a post-trial motion citing these points as error. Because of the failure to raise these points at trial, they are waived unless they constitute plain error and are not harmless beyond a reasonable doubt. (*People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727.) However, we need not decide whether they were waived because, even if not waived, we do not consider them to be reversible error.

For the prosecution to ask a defendant in a criminal case whether prosecution witnesses whose testimony conflicted with his were lying has been held to be improper in many fairly recent cases including *People v. Robinson* (1978), 67 Ill. App. 3d 539, 384 N.E.2d 962 (a bench trial); *People v. Spates* (1978), 62 Ill. App. 3d 890, 379 N.E.2d 869; *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025; *People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705; *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450. In *Hicks*, the court explained that asking such a question was to be condemned because it (1) invaded the province of the jury, and (2) put the defendant up to ridicule. However, in neither the cited cases nor any other cases called to our attention, has the reviewing court held prosecution conduct similar to that here to, of itself, require reversal. In *Addison*, the court, citing *Meeks*, noted that the questions were not necessarily prejudicial.

■■ Here, the evidence in support of the conviction was strong and the asking of the questions merely called attention to the obvious, *i.e.*, that if defendant was telling the truth, the various State's witnesses, whose testimony directly conflicted with his, were lying. Although we condemn the questioning as unnecessary and improper, we do not find it to have been substantially prejudicial.

■■ As it is unnecessary for us to invoke waiver in order to reject defendant's claim that the State's cross-examination and closing argument tactics created reversible error, we have no difficulty in also rejecting his claim that he was deprived of effective assistance of counsel. The supreme court has not receded from the rule that convictions should not be set aside because of incompetency of counsel "unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham. [Citations.]" (*People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142, 146.) In *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, however, (1) the majority spoke of the foregoing rule as being applicable to cases where, unlike here, the trial counsel was privately retained, and (2) the special concurrence of Mr. Justice Clark suggested the desirability of a stricter standard than that of "a farce or a sham" and mentioned the "minimum standard of professional representation" required in *United States ex rel.*

*Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, 641. Here, the failure of the trial counsel to object to the only mildly prejudicial tactics of the State falls short of constituting incompetency by any adopted standard called to our attention.

■■ The evidence of defendant's possession of the missing television set shortly after its removal from the premises in question was the key link in the proof of his guilt. Over defendant's objection, the court gave an instruction tendered by the State which was in the form of IPI Criminal No. 13.21 and provided:

> "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary and theft."

This instruction has been deemed appropriate not only in theft cases but in burglary cases as well. *People v. Curtis* (1969), 116 Ill. App. 2d 298, 254 N.E.2d 87; *People v. Burris* (1969), 116 Ill. App. 2d 79, 253 N.E.2d 628.

Citing *Rugendorf v. United States* (1964), 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825, defendant argues that the instruction was erroneously given because he had offered a reasonable explanation for his possession of the set. However, there the court clearly explained that whether the defendant's explanation was to be deemed reasonable was primarily a question of fact for the trier of fact. The *Curtis* and *Burris* courts applied the same rule. In *Burris*, the court stated:

> "It is also contended that once the defendant offered an explanation of his possession of the air conditioner the presumption vanished and the exclusive possession instruction should not have been given. This contention is not valid. The jury was not required to believe the defendant's explanation. Unless the jury did believe his story, which it obviously did not, the possession was not 'explained,' and the presumption was still valid." 116 Ill. App. 2d 79, 83, 253 N.E.2d 628, 630.

The defendant's explanation was at odds with much of the State's evidence. The court properly instructed the jury as to the inference of guilt which it could apply.

For the reasons stated, we affirm.

Affirmed.

MILLS and CRAVEN, JJ., concur.