THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD D. KERANS, Defendant-Appellant.

Third District   No. 81-184

Opinion filed January 29, 1982.

Robert Agostinelli, Stephen Omolecki, and Michael Filipovic, all of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Ronald D. Kerans, was found guilty following a jury trial of four counts of armed violence, two counts of aggravated battery, two counts of aggravated assault and one count of unlawful use of weapons. Judgments of conviction and concurrent nine-year sentences of imprisonment were imposed on each of the four counts of armed violence, two counts involving criminal damage to property in excess of $150, while armed with a dangerous weapon, and two counts of aggravated battery (great bodily harm) while armed with a dangerous weapon.

The defendant raises several issues on appeal. Prior to reviewing each of the issues presented for review, it is necessary to briefly summarize the factual context from which the defendant's convictions occurred and this appeal is taken.

On September 19, 1980, the defendant and his girlfriend, Becky Willard, attended a party held at the residence of Harry Stufflebeam. Later in the evening, after extensive drinking, the defendant discovered his girlfriend in the arms of his best friend, Stufflebeam, as they embraced in the bathroom with the lights turned out. The defendant retrieved a revolver from his automobile, entered the bathroom and proceeded to strike the startled couple with the weapon. Stufflebeam was knocked into the bathtub, and Willard fell behind the toilet. A scuffle ensued in which several shots were fired. As the fight between the defendant and Stuf-

flebeam continued, the defendant managed to grab his girlfriend by the hair, knock her to the floor and kick her in the stomach. The defendant then reloaded his weapon and shot up the living room, its furnishings, including a television set, before he left for home on his motorcycle. When the defendant arrived at his residence he reloaded his gun a third time, drove his girlfriend's car into the country and proceeded to shoot it full of holes.

Testimony was presented which established that the gunshot damage to Stufflebeam's residence and contents was in excess of $1,100 and the cost of repairing Becky Willard's car exceeded $700.

Defendant contends his two convictions for armed violence based on the offense of criminal damage to property over $150 must be reversed because the legislature did not intend armed violence to include such a felony. Defendant also argues in the alternative that the penalty is unconstitutional.

■■ The primary rule in the interpretation and construction of statutes is that the intention of the legislature should be ascertained and given effect. Legislative intent is derived primarily from the language used in the statute. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) Where the language is certain and unambiguous, there is no need for judicial interpretation or construction (*Illinois Racing Board v. Arlington Park Thoroughbred Race Track Corp.* (1979), 76 Ill. App. 3d 289, 395 N.E.2d 93), and the only legitimate function of the courts is to enforce the law as enacted (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758, 764.) As the supreme court has recently stated in *People v. Haron* (1981), 85 Ill. 2d 261, 268, 422 N.E.2d 627, 630:

"* * * it is not our function to declare that the General Assembly did not mean what the plain language of the statute imports * * *."

It is a reviewing court's duty to interpret the statute as it is, regardless of the court's own opinion as to the desirability of the result from that interpretation. *People v. McCoy* (1975), 29 Ill. App. 3d 601, 332 N.E.2d 690.

The legislature has defined armed violence as follows:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law." Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

■■ The language of the armed violence statute is clear and unambiguous. It applies to "any felony." Since criminal damage to property in excess of $150 is plainly a felony, it can serve as a predicate felony for armed violence.

This court pointed out in *People v. Lenhart* (1980), 90 Ill. App. 3d 502, 506, 413 N.E.2d 220, 223-24, *appeal denied* (1981), 85 Ill. 2d 56.

"It is clearly within the State's power to maintain a distinction between misdemeanors and felonies [citation], and such a distinction may be based upon monetary value [citation]. The legislature's decision to severely punish an armed individual who shows his disrespect for the law by committing a felony is not rendered irrational by its declining to similarly punish an armed misdemeanant."

■■ Defendant's alternative argument is that the minimum penalty of six years' imprisonment for armed violence based on the use of a dangerous weapon during the commission of criminal damage to property in excess of $150 is unconstitutional.

The supreme court in *People v. Haron* (1981), 85 Ill. 2d 261, 279-80, 422 N.E.2d 627, 635, citing *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, recently restated the applicable standard in this regard:

" 'It is the general rule that the legislature, under the State's policy power, has wide discretion to prescribe penalties for defined offenses. (*People v. Dixon* (1948), 400 Ill. 449, 453.) * * *

"We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159, 128 N.E.2d 691.)

The test, thus, focuses on the purposes and objectives of the enactment in question.' "

In light of the purposes and objectives of the legislature in enacting the armed-violence statute, as already discussed, it cannot be said that the application of the statute to criminal damage to property over $150 is not reasonably designed to correct the danger to people due to the existence of dangerous weapons during the commission of a crime which the legislature has determined exists.

Defendant further contends that the trial court erroneously granted the People's motion to have Becky Willard declared a hostile witness pursuant to Supreme Court Rule 238 (Ill. Rev. Stat. 1979, ch. 110A, par. 238). Defendant maintains that the court erred for two reasons, namely, that Ms. Willard's testimony did not make the People's case weaker in any respect and that it was not "surprising" as required under Rule 238. Defendant further contends that the State's Attorney used Ms. Willard's prior statements not for impeachment purposes but rather as substantive evidence and that she was improperly cross-examined on collateral matters.

We believe the trial court's declaration of Becky Willard as a hostile witness was proper and within its discretion and that her prior inconsistent statements were properly used for impeachment purposes and not as substantive evidence.

Supreme Court Rule 238 provides:

"If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." Ill. Rev. Stat. 1979, ch. 110A, par. 238.

A proper foundation for the declaration of the witness as hostile is a showing that the witness' veracity or integrity is doubtful, that neither side will vouch for her testimony, that her testimony relates to direct issues and is necessary to prevent a miscarriage of justice. *People v. Robinson* (1977), 46 Ill. App. 3d 713, 717-18, 361 N.E.2d 138, 141-42.

■■ The decision to call a witness as a court's witness is within the sound discretion of the trial court (*People v. Boyle* (1979), 78 Ill. App. 3d 791, 396 N.E.2d 1347; *People v. Henson* (1963), 29 Ill. 2d 210, 193 N.E.2d 777), unless its decision is clearly abused. *People v. Robinson* (1974), 21 Ill. App. 3d 343, 315 N.E.2d 95.

Defendant maintains that the People failed to demonstrate "surprise" and that they were "forewarned" of Ms. Willard's intention to change her testimony as evidenced by their pretrial motion, which requested that Ms. Willard be declared a hostile witness. The defendant's contention that there was insufficient compliance with the "surprise" requirement as it relates to declaring a witness hostile is without merit.

■■ The filing of the pretrial motion by the State's Attorney which sought to declare Ms. Willard a hostile witness did not negate the element of surprise required by Supreme Court Rule 238. In fact it was the surprise turnabout in the witness' attitude towards the defendant and her hostility to the prosecution of the case which prompted the filing of the motion in the first place.

In a similar context, it has been held that knowledge of the existence of prior inconsistent statements of a witness does not negate the element of surprise required by Supreme Court Rule 238. (*People v. Norris* (1969), 118 Ill. App. 2d 406, 409, 254 N.E.2d 304, 306.) We are also aware of authority to the contrary, *i.e.*, *Seibutis v. Smith* (1980), 83 Ill. App. 3d 1010, 1014, 404 N.E.2d 950, 953. However, a review of the record in the case at bar indicates that the prosecutor had no prior knowledge of an actual change in the testimony of the witness regarding the facts of the occurrence itself, but only that he was made aware prior to trial that the witness had undergone an apparent change of attitude regarding her willingness to cooperate in the prosecution of the case against her boyfriend.

■■ It is established that the ultimate decision as to when cross-examination of a witness on the ground of surprise should be permitted is left to the sound discretion of the trial judge. *People v. Wesley* (1959), 18 Ill. 2d

138, 151, 163 N.E.2d 500, 507; *People v. Kurena* (1980), 87 Ill. App. 3d 771, 779, 410 N.E.2d 277, 284.

In the case at bar, the State's Attorney filed a pretrial motion to have Ms. Willard declared a hostile witness. He stated that he intended to call the victim, Ms. Willard, as a witness and that her testimony would relate to direct issues in the case and would be necessary to prevent a miscarriage of justice, but that he could not vouch for her veracity. In the accompanying affidavit, the State's Attorney informed the court that Linda Merrick, another witness for the People, received a telephone call from Ms. Willard advising her to tell the State's Attorney "to stay away from" Ms. Willard. Ms. Merrick was further instructed to inform the State's Attorney that if he called her (Ms. Willard) to testify, Ms. Willard would "let everything backfire." Ms. Willard personally called the State's Attorney at the latter's request and expressed open hostility to him. She refused to discuss the case with him and told him that anything he would like to ask her he should do so in court. The State's Attorney was informed that Ms. Willard and the defendant were seen together and "appeared to be back together."

The court stated that any ruling on the hostility issue would be premature and reserved its ruling until Ms. Willard testified. After Ms. Willard testified that as far as she knew defendant did not fire his gun, hit her, etc., the court granted the People's motion to have her declared a hostile witness.

■■ The trial court's ruling that it would have been premature to have declared Ms. Willard a hostile witness until she testified was correct. (*People v. Norris* (1969), 118 Ill. App. 2d 406, 254 N.E.2d 304.) Until such time, the State's Attorney's feeling that she would not testify truthfully based on the facts set forth in the affidavit was an insufficient basis to grant the motion.

In addition to the foundation errors claimed by the defendant, two further errors are asserted. First, defendant claims that the State's Attorney used Ms. Willard's prior inconsistent statement substantively.

Supreme Court Rule 238 expressly allows a hostile witness to be impeached "by proof of prior inconsistent statements." This court has recognized that both sides may cross-examine and impeach a hostile witness (*People v. Robinson* (1977), 46 Ill. App. 3d 713, 718, 361 N.E.2d 138, 142; accord, *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 166, 274 N.E.2d 846, 851), although the record must not show that the purpose was not only to impeach the witness, but to use the prior statements as substantive evidence of defendant's guilt. (*People v. Robinson* (1977), 46 Ill. App. 3d 713, 718, 361 N.E.2d 138, 142.) This court has followed the general rule stated in *People v. Michaels* (1929), 335 Ill. 590, 592, 167 N.E. 857, 858, that:

" "* * * when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying.' " (*People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244, 248.)

See *People v. Neukom* (1959), 16 Ill. 2d 340, 158 N.E.2d 53.

■■ In the instant case, the State's Attorney was properly allowed to impeach Ms. Willard by calling her attention to her former statements.

Defendant contends the State's Attorney's closing argument indicated he used the prior statements as substantive evidence and thereby exceeded the limits of impeachment under Supreme Court Rule 238. However, a close examination of the record discloses that the State's Attorney properly used Ms. Willard's prior statements for impeachment purposes only.

■■ After Ms. Willard was declared a hostile witness, defense counsel called her as a witness for the defense. As a defense witness, Ms. Willard was thereafter cross-examined by the State's Attorney and was asked if she had previously given a taped statement in which she stated that defendant had struck her with a gun and shot the gun. She admitted having done so. Such cross-examination as to prior inconsistent statements was proper since the inconsistency between the prior statement and her testimony at trial was substantial and related to a material issue. *People v. Thomas* (1979), 72 Ill. App. 3d 186, 198, 389 N.E.2d 1330, 1339.

The State's Attorney contrasted Ms. Willard's prior statements with her trial testimony in order to impeach her credibility after she had taken the stand as a defense witness. The State's Attorney did not use it as substantive evidence outside the limits of impeachment under Rule 238. Furthermore, the jury was properly instructed as to the proper use by them of a prior inconsistent statement by a witness.

■■ Defendant contends that the trial court committed reversible error in allowing the State's Attorney to cross-examine Becky Willard after she was declared a hostile witness concerning her sudden decision just prior to trial not to cooperate with the State's Attorney.

■■ ■ The widest latitude is allowed in cross-examination for the purpose of establishing a witness' bias, prejudice, or motive to testify falsely. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) It is proper to cross-examine a witness about her acts or conduct which are inconsistent with what would have been the natural or probable course of conduct if the witness has testified truthfully. (*People v. Rainford* (1965), 58 Ill. App. 2d 312, 319, 208 N.E.2d 314, 318.) Furthermore, the wide

latitude rests largely within the discretion of the trial court, and absent a clear abuse of that discretion resulting in manifest injustice to the defendant, a reviewing court will not interfere. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.

■■ Defendant next contends that he should be granted a new trial because at one point during the State's Attorney's cross-examination of him he was asked if the contrary testimony of various witnesses meant they were lying. The People respond that the question, although improper, did not create substantial prejudice warranting a new trial. We agree. Although the questions were objectionable, in the context of the complexity of the case and of all the testimony adduced at trial, they were not so decisive as to warrant a new trial. *People v. Moore* (1980), 80 Ill. App. 3d 996, 400 N.E.2d 525; *People v. Hainline* (1979), 77 Ill. App. 3d 30, 395 N.E.2d 1224.

Defendant contends his conviction should be reversed and the cause remanded for a new trial because of the purported misconduct of the State's Attorney.

■■ Defendant's first allegation of prosecutorial misconduct concerned a suggestion made by the State's Attorney during the cross-examination of Linda Merrick by defense counsel. Defense counsel was attempting to impeach Mrs. Merrick with a prior statement which the State's Attorney objected to on the basis of relevancy. When the court was attempting to discern what the prior statement was, the State's Attorney suggested that the entire statement be read. The trial court ruled that Mrs. Merrick answer defense counsel's question about the prior statement.

Defendant cites *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402, as support for his assertion that this suggestion constituted prosecutorial misconduct which requires a new trial. However, the situation in *Hovanec*, upon which prosecutorial misconduct was found, is sufficiently distinguishable from the instant factual situation that reliance upon it is misplaced. In *Hovanec*, prosecutorial misconduct necessitating a new trial was found based on the fact that the prosecutor made repeated and deliberate offers (a total of five instances) in front of the jury to stipulate to a pretrial statement by a witness. This was done even though objections to the questions had been repeatedly sustained. Additionally, the prosecutor further emphasized the impression that defendant was attempting to hide something from the jury when, during closing argument, he essentially said so four different times.

In the case at bar, the single and isolated instance of the State's Attorney's suggestion that Mrs. Merrick's entire statement be read does not amount to the blatant and repeated misconduct of the prosecutor in *Hovanec*.

■■ Defendant also contends reversible error occurred because of a comment by the State's Attorney in closing argument which purportedly

penalized defendant for exercising his sixth amendment right to counsel. The relevant statement is as follows:

"And yet, as you watched him [defendant] over here, any time something came up, he was right in the attorney's ear. And, he was able to sit back and listen to all the other testimony and then weave a story as best he could, navigated through the evidence, to steer a course that he hoped would be persuasive to you."

Defendant cites *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306, and also cites two cases cited within the *Meredith* opinion, *United States ex rel. Macon v. Yeager* (3d Cir. 1973), 476 F.2d 613, *cert. denied* (1973), 414 U.S. 855, 38 L. Ed. 2d 104, 99 S. Ct. 154, and *Zemina v. Solem* (D.S.D. 1977), 438 F. Supp. 455, *aff'd* (8th Cir. 1978), 573 F.2d 1027, as support for his contention that the complained-of comment penalized defendant for exercising his right to counsel.

The People contend the State's Attorney's comment did not create an inference which resulted in penalizing the defendant for exercising his right to counsel. We believe the cases cited by defendant are distinguishable because the prosecutor explicitly inferred, if not stated outright, that the defendant contacted his attorney because he was guilty. In *Meredith*, the prosecutor stated: "Well, I submit he [defendant] knew that he had shot those people that is why he went to go call his lawyer." (84 Ill. App. 3d 1065, 1071, 405 N.E.2d 1306, 1311.) Likewise, in *Macon* it was asserted in closing argument: " 'He [defendant] goes home and puts his shirt down in the chest, a torn shirt. Then he goes to bed. He says he had trouble sleeping. He gets up the next morning and lo and behold, what does he do? He called his lawyer. *These are acts of innocence*? I say, ladies and gentlemen, his story is implausible, impossible and you can judge by his own *conduct*, unbelievable.' " (476 F.2d 613, 614.) Finally, in *Zemina*, the prosecutor stated in closing argument that defendant's call to his lawyer was "a telling sign" of his guilt.

The obvious inference in all three cases was that only a person who is guilty would contact an attorney. In each case the court held that it was prejudicial error to equate the exercise of the constitutional privilege of one's right to counsel with an admission of guilt. This was not the situation in the case at bar. The gist of the State's Attorney's comment, although improper, was that defendant, during trial, talked with his attorney. The remark was unnecessary but harmless error for it merely called attention to the obvious, *i.e.*, it is common with all clients and their counsel to confer during the course of a trial.

Defendant finally contends his four concurrent nine-year terms of imprisonment on the four counts of armed violence should be reduced to the minimum six-year terms. Defendant argues that the nine-year terms are excessive considering his potential for rehabilitation and the nature and circumstances of the offenses.

■■ The trial court has a considerable amount of discretion in sentencing a defendant because it is in a superior position to evaluate the myriad factors which comprise the sentencing determination. Absent an abuse of discretion, a reviewing court will not substitute its judgment for that of the trial court, even though the reviewing court would have imposed a different sentence had that function been delegated to it. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■■ In the case at bar, the trial court acted within its discretion in imposing four concurrent nine-year terms of imprisonment on the armed violence convictions. A nine-year sentence is well within the applicable range of six to 30 years for armed violence.

Defendant's contention that his rehabilitative potential mandates an imposition of the minimum sentence is not well founded. The trial court considered defendant's rehabilitative potential and obviously found differently. The court, in examining defendant's long list of prior offenses evidencing a disrespect for the law, noted that defendant, who was 32 years of age at the time of sentencing, started committing these albeit minor offenses when barely at the age of 16 years. The court also noted that defendant incurred a number of traffic offenses which involved alcohol consumption and that there was a "reasonably serious" conviction in California of receiving stolen property. The court concluded that it was obvious that defendant's alcoholic consumption had played a significant part in his trouble with the law. It cannot be overlooked that consumption of alcohol by the defendant was also involved in his commission of the instant offenses. Defendant's marked and continuing inability to control his drinking and conform to the requirements of the law negates the likelihood of good rehabilitative potential.

In this regard, defendant's disrespect for the law and his drinking problem was evident at the time that the jury verdict came in in the case at bar. According to the State's Attorney, when defendant was advised that the verdict had been returned and was requested to return to the courtroom, defendant instead remained drinking at the tavern and made the court wait. When defendant eventually returned he appeared to be in an inebriated state.

Defendant's conduct subsequent to the commission of the instant offenses also demonstrates his lack of potential rehabilitation. It was brought out at trial that defendant had threatened potential witnesses for the People not to testify.

Consideration of the nature and circumstances of the offenses also does not warrant sentence reduction. The trial court stated that it had considered the evidence received at trial. Defendant's brief version of what happened was not what the jury obviously believed. Defendant's

attacks on Harry Stufflebeam and Becky Willard were calculated and not done "in the heat of passion." According to the People's evidence, when defendant saw Stufflebeam and Willard in the bathroom with the door open, he did not become suddenly enraged but rather returned to his car, removed a gun, and parked the car three or four blocks away. He then returned to the house, pistol-whipped and kicked both Stufflebeam and Willard, fired his gun several times while inside the small bathroom, and placed the gun on Stufflebeam's forehead while asking him if he wanted to die.

Finally, defendant argues that a more-than-minimum term of imprisonment is improper essentially because the minimum sentence itself for armed violence is too high under the circumstances of the case at bar. However, once again defendant is arguing that the legislature should not have intended what it obviously did intend. The legislature increased the penalty for the acts of armed violence committed by defendants because such acts were seen by the legislature as creating a high potential of danger to people. The legislature recognized the likelihood of violence to people by the mere possession of a dangerous weapon while committing a felony. Here, the defendant not only possessed a dangerous weapon but used it repeatedly to inflict serious injury and extensive property damage upon his victims.

The defendant has failed to demonstrate that the trial court abused its discretion in sentencing him to four concurrent nine-year terms of imprisonment for his armed violence convictions. The sentence was properly arrived at and was reasonable in view of the applicable aggravating and mitigating factors. In mitigation it was shown that in the interim between the trial and the sentencing hearing, the defendant and Becky Willard were married. It was also shown that the defendant was a widower (having been previously acquitted of his first wife's murder). The aggravating factor of infliction of serious bodily harm alone warrants a greater than minimum term. Defendant's rehabilitative potential and the nature and circumstances of the offenses were properly considered and do not warrant a lesser sentence.

For the foregoing reasons the defendant's convictions and sentences for armed violence are hereby affirmed.

Affirmed.

ALLOY, J., concurs.

JUSTICE STOUDER, specially concurring:

The majority, in its analysis of Supreme Court Rule 238 (Ill. Rev. Stat. 1979, ch. 110A, par. 238), has confused the concepts of hostile, occurrence

and court's witnesses. This is understandable since the authorities cited by the majority are contradictory in defining and applying these concepts. Because of the confusion, I disclaim any agreement with the majority's reasoning and I believe no useful purpose would be served in attempting to clarify the issues. Any error which the trial court might have committed in the application of Rule 238 was harmless due to the fact that Ms. Willard, after being declared a hostile witness, was called as a defense witness and thereafter properly cross-examined by the State's Attorney as to her prior inconsistent statements.