(No. 10649.—Judgment affirmed.)
John F. Devine, Admr., Plaintiff in Error, *vs.·* Eli Pfaelzer, Defendant in Error.

*Opinion filed February 21, 1917.*

1. Negligence—*when verdict for defendant should be directed.* Ordinarily, in a personal injury suit the question of the exercise by the injured person of due care for his own safety is a question of fact for the jury, but if there is no evidence tending to show such care or of any fact or circumstance from which a reasonable inference of such care may be drawn it is the duty of the court to direct a verdict for the defendant.

2. Same—*rule where one risks his life to save another.* An attempt by a person to save the life of another although at the risk of his own life or injury to his person is sufficient to exempt such person from a charge of negligence unless his act was rash and reckless, entailing almost certain injury.

3. Same—*when fact that deceased was attempting to stop runaway horse does not justify recovery.* Where the only ground for justifying the entirely voluntary action of a person in attempting to stop a horse, which was running away with an empty buggy on a residence street of a city, is that he encountered the risk to save human life, there must, in order to justify a recovery of damages from the owner of the horse, be some evidence tending to show that some person or persons were in danger, or some circumstances proved from which such inference may reasonably be drawn.

Farmer and Carter, JJ., dissenting.

Writ of Error to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. L. McKinley, Judge, presiding.

JAMES C. McSHANE, for plaintiff in error.

JOHN A. BLOOMINGSTON, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John F. Devine, plaintiff in error, administrator of the estate of Philip Fitzpatrick, deceased, brought suit in the superior court of Cook county against Eli Pfaelzer, defendant in error, and the Eli Pfaelzer Packing Company, to recover damages on account of the death of Fitzpatrick, alleged to have been caused by the wrongful act of the defendants. The suit was dismissed as to the Eli Pfaelzer Packing Company, and after a trial at which the jury disagreed, additional counts against Eli Pfaelzer alone were filed, and the cause was tried on the issue formed by a plea of not guilty. There was a verdict for the plaintiff for $7500, and upon the plaintiff remitting $3000 the defendant's motion for a new trial was overruled and judgment was entered for $4500. An appeal was prosecuted to the Appellate Court for the First District, and that court reversed the judgment for error of the trial court in refusing to direct a verdict for the defendant and remanded the cause for another trial. On motion of the plaintiff and his admission of record that he would be unable to prove on any future trial any other or additional facts or circumstances showing or tending to show that Fitzpatrick was in the exercise of ordinary care for his own safety, the court amended the judgment by striking out the order remanding the cause. A writ of *certiorari* was granted by this court for a review of the judgment of the Appellate Court.

The charge of the declaration was that the defendant, Eli Pfaelzer, left his horse and buggy standing upon a public highway in Chicago without securely fastening the horse, and in consequence thereof the horse ran away in a public street and knocked down Philip Fitzpatrick and ran over

him, causing the injuries which resulted in his death. At
the trial there was no dispute as to the manner in which the
horse was fastened. The defendant left the horse hitched
to a light top-buggy on the west side of Calumet avenue, a
north and south street, facing south towards Forty-seventh
street, which runs east and west, and the horse was.fastened
by a leather strap an inch and a quarter wide, compara-
tively new, buckled to the horse's bit and attached to a
25-pound weight. The defendant went around the corner
upon Forty-seventh street to the Calumet market, and in
his absence some children were playing "horse" on the side-
walk, and one of them was drawing a box with wheels
on it, in which a child was riding. The child in the box
clucked in the usual manner for starting a horse, and the
horse started up, dragging the weight, turned the corner
into Forty-seventh street, lost the weight and the strap, or
part of it, and ran away. While there was no dispute as
to the manner in which the horse was fastened it was a
controverted question of fact whether the method was rea-
sonably secure, and the Appellate Court having made no
finding of fact different from the trial court, the question
of the defendant's negligence was finally determined by the
Appellate Court. The reversal was for error of law, and
it was the duty of the Appellate Court to remand the cause
if upon another trial the error could be obviated. It was
admitted of record that if there was such error it could not
be obviated by additional evidence, and accordingly the mo-
tion to amend by striking out the remanding order was
allowed.

There was no controversy at the trial as to what oc-
curred at the time of the accident, the condition of the
street where it occurred, or any other matter of fact. The
horse, after turning into Forty-seventh street, ran east sev-
eral blocks on that street and then turned north in St. Law-
rence avenue. The accident occurred in the first block be-
tween Forty-seventh street and Forty-sixth street, the next

street north running east and west. St. Lawrence avenue at that place was a residence street, built up with apartment houses on both sides. Forty-sixth place, thirty-five feet wide, runs west from St. Lawrence avenue midway between Forty-seventh and Forty-sixth streets. There was an apartment building on the north side of Forty-sixth place extending north to an alley, and Fitzpatrick was janitor of that building. It was between seven and seven-thirty o'clock in the evening of August 8, 1908, and Fitzpatrick had been showing a man and his wife around the apartment building and was standing with them in front of the building. The other man and his wife were never afterward found by either of the parties, so far as appears. When these people saw the horse turn into St. Lawrence avenue, running toward them, Fitzpatrick and the other man ran out into the street when the horse was about two hundred feet away. The other man was on the east side of the roadway, about eight or ten feet east and a few feet south of Fitzpatrick. As the horse passed the other man he apparently grabbed for its head, but the horse shied away from him to the northwest, knocked Fitzpatrick down and ran over him, inflicting injuries so he died the following day.

The question presented to the trial court and Appellate Court was whether Fitzpatrick was in the exercise of ordinary care for his own safety, and ordinarily that question is one of fact for a jury, but when there is no evidence tending to show that a person injured was in the exercise of due care and caution, or any fact or circumstance appears from which a reasonable inference of such care and caution may be drawn, it is the function and duty of the court to direct a verdict for the defendant. (*Beidler* v. *Branshaw,* 200 Ill. 425; *Wilson* v. *Illinois Central Railroad Co.* 210 id. 603.) It is, of course, clear and not denied that Fitzpatrick voluntarily encountered a known danger involving a risk to himself in a matter in which he had no personal interest and no property to be affected, and the

ground upon which it is claimed that voluntarily incurring such danger and risk was not a negligent act but that he was in the exercise of ordinary care for his own safety, is that he encountered the risk for the purpose of saving human life. It is a well established rule of law that an attempt by one to save the life of another, although at the risk of his own life or personal injury, is sufficient to exempt such person from a charge of negligence unless the act was rash or reckless, entailing almost certain injury to the one attempting the rescue. The law in that regard was recognized by this court in the case of *West Chicago Street Railroad Co.* v. *Liderman,* 187 Ill. 463, where a mother went upon a street car track to rescue her infant child from being run over and injured by an approaching train of cars. The court said: "It may,—we think must,—be conceded that, leaving out of view the peril of her infant child, she was guilty of such contributory negligence as would defeat the action," but the exposure of her child to danger and the attempt to rescue it were held to free her from the charge of negligence. The court there quoted from *Eckert* v. *Long Island Railway Co.* 43 N. Y. 502, where the plaintiff's intestate was killed while attempting to rescue a child on the track of the defendant, who, if not rescued, must inevitably have been crushed by the rapidly approaching train, and where the court said that the conduct of the deceased would have been grossly negligent but for the effort to save the child. This court regarded that decision as a clear statement of the law and the reason upon which the rule rests. Other illustrative cases are *Mobile and Ohio Railroad Co.* v. *Ridley,* 114 Tenn. 727, where a railroad employee rushed on the track to save a boy standing with his back to a rapidly approaching train and saved the life of the boy but was killed himself; *Pennsylvania Co.* v. *Langendorf,* 48 Ohio St. 316, where there was an attempt to rescue a child in front of an approaching train; *Texas and New Orleans Railroad Co.* v. *Scarborough,* (Tex.) 104

S. W. Rep. 410, where the deceased was killed in an attempt to rescue a person on the track in front of an approaching train; and *Hirschman* v. *Dry Dock Co.* 61 N. Y. Supp. 305, where a mother ran in front of a street car to save her child. It is not essential to the application of the rule that the effort should be to save the life of some particular and definite person, as in the case of *Manthey* v. *Rauenbuehler,* 75 N. Y. Supp. 715, where a man was killed in attempting to stop a runaway horse at the hour when a public school was dismissed and the street was more or less filled with children, who were crossing back and forth and playing in the street, and the conditions were such as would naturally cause apprehension of injury to the children or others in the street; and also *Halloran* v. *City of New York,* 153 N. Y. Supp. 447, where a team of horses was running away, dragging a street-sweeper, in what the court called in one place a busy street and in another a measurably busy street, although the danger was not at the moment imminent to a definite person.

The question whether the judgment of the Appellate Court was right depends upon whether the evidence brought Fitzpatrick within the rule of law, and the burden was on the plaintiff to prove that Fitzpatrick exposed himself to the danger for the purpose of saving the life or lives of some person or some number of persons then exposed to danger by the horse running away, and there was no evidence whatever tending in any degree to prove that fact. Three persons witnessed the accident. William J. Irwin and his wife were sitting in the bay-window of their apartment on the first floor of the apartment house of which Fitzpatrick was janitor, and they saw the horse running north and watched him until Fitzpatrick was struck. The bay-window looked toward the south and they did not see the street to the north of the place of the accident. There were two men and a woman standing at the corner of Forty-seventh street and St. Lawrence avenue at a drug

store, but they were not in the roadway and the horse had passed that point, so that they were in no danger. Forest E. Fish stood on the sidewalk at the drug store, smoking, and did not see anyone in the street except the two men. He watched the occurrence, and was in a position to see anyone in the roadway or on the street crossing beyond the horse. No one testified that St. Lawrence avenue was a busy street. There was no evidence nor any circumstance which would raise an inference that there was anyone in the roadway or any person in the slightest danger from the horse. There was nothing in the evidence from which it could even be presumed what was in the mind of Fitzpatrick or that he had any occasion to believe that anyone was in danger. No case has been found where recovery was permitted under like circumstances. St. Lawrence avenue was a residence street and bore no resemblance to the busy street in Brooklyn where the team was running away with the street-sweeper. The fact that twenty or twenty-five persons gathered at the place after the accident would not justify an inference that any of them were in the street at the time of the accident or in any danger. The horse ran north to Forty-third street and did not encounter any person and no one was injured by him. As there was no evidence tending in any degree to prove that anyone was in danger, or that Fitzpatrick, in voluntarily incurring the risk, did so to save human life, he was not relieved from the charge of negligence, and the trial court erred in not directing a verdict for the defendant.

The judgment of the Appellate Court was right, and it is affirmed.                              *Judgment affirmed.*

FARMER and CARTER, JJ., dissenting.