## Anna Ingram, Administratrix, Defendant in Error, v. William J. Jackson, Receiver, Plaintiff in Error.

1. RAILROADS, § 508*—*who are trespassers on railroad right of way*. In an action against the receiver of a railroad to recover for death, where it appeared that the deceased and his father, a man about seventy-eight years old, were walking upon a space between certain tracks, which, although railroad right of way, was generally used by the public, the father walking slightly in advance, and where as both entered upon the right of way a freight train running at about twelve to twenty-five miles an hour came around a curve about one and one-half miles away, and as it approached to within from twelve to sixty feet, the father suddenly stepped on the track in front of the approaching train, and when the son tried to rescue him both were struck by the engine and killed, *held* that both the deceased and his father were trespassers, and that there could have been no recovery by the representative of the father under the proof, and that the attempted rescue by the son did not make him any the less a trespasser.

2. RAILROADS, § 517*—*when duty to exercise ordinary care to avoid injuring trespassers upon track arises*. The duty to exercise ordinary care to avoid injury to trespassers upon a railroad track arises only after their presence upon the track is shown to have become known to the servants of the railroad company.

3. RAILROADS, § 517*—*what duty owed to trespassers*. A railroad company owes no duty to trespassers upon its right of way, except

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to refrain from wantonly and wilfully injuring them, and this rule is the same whether they are trespassers or licensees.

4. RAILROADS, § 509*—*what is effect of traveling on track with knowledge of company on relation of trespasser.*  The fact that persons have been in the habit of traveling upon the right of way of a railroad company does not change ·the obligation or duty of the company to such persons traveling thereon for their convenience, and they are still trespassers, even though such use was known to the employees of the company.

5. RAILROADS, § 550*—*what is liability of company for death of trespasser attempting to rescue another trespasser on tracks.*  In an action against a steam railroad company for death, where the decedent and his father were trespassers upon the right of way of the defendant, and where the father stepped on the track in front of an approaching train and was killed, and the son in attempting to rescue the father was likewise killed, and it was claimed by plaintiff that she was entitled to recover on the theory that her intestate, in his attempted rescue of his father, was placed in a position of peril through the negligence of the defendant, *held* that notwithstanding the fact that the attempt to rescue the father from imminent danger may not have amounted to contributory negligence, no liability rested on the defendant, unless it was negligent in placing the father in peril, or in failing to avoid the injury after discovering the peril.

6. RAILROADS, § 531*—*what is duty of trainmen seeing persons on track.*  Trainmen operating a steam railroad train are under no obligation to stop their train, even though they see travelers on foot upon the right of way near the track, as they have a right to presume such persons will remain at a safe distance from the track, and they may continue in that assumption until such travelers manifest a disposition to go upon the track, or so near thereto as to be in danger of injury.

7. RAILROADS, § 590*—*when error committed in passing upon instructions in action for death of trespasser.*  In an action against a steam railroad company for death, where the decedent and his father were trespassers upon the right of way of the defendant, and where the father stepped on the track in front of an approaching train and was killed, and the son in attempting to rescue the father was likewise killed, and where the court stated that the father could not have recovered under the facts of the case, and certain instructions given for plaintiff ignored the question whether the defendant was guilty of negligence tending to place the father in danger, while a number of those refused for the defendant covered such

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

question, and required proof that the father was in a place of peril in which he had been placed through the negligence of the defendant, at the time the deceased attempted to rescue him, before a recovery could be had, *held* that reversible error was committed in passing upon the instructions.

8. NEGLIGENCE, § 76*—*when person injured in attempt to rescue person imperiled by negligence of another may recover.* A person attempting to rescue one imperiled by the negligence of another may, if injured in the attempt, recover from the negligent person if the attempted rescue be not one of recklessness and rashness and the rescuer did not place the imperiled person in danger.

9. RAILROADS, § 536*—*when violation of speed ordinance is not proof of wantonness or wilfulness.* Although the violation of a speed ordinance by a steam railroad company is prima facie proof of negligence, yet it is not proof of wantonness or wilfulness, especially when the injury occurred at a place which did not have the appearance of a public crossing.

Error to the Circuit Court of Franklin county; the Hon. CHARLES H. MILLER, Judge, presiding. Heard in this court at the March term, 1917. Reversed and remanded. Opinion filed June 18, 1917.

EDWARD C. CRAIG, DONALD B. CRAIG and HOLMES & DILLON, for plaintiff in error; HOMER T. DICK, of counsel.

THOMAS H. CREIGHTON and W. P. SEEBER, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Plaintiff in error, William J. Jackson, receiver of the Chicago & Eastern Illinois Railroad Company, operates a railroad running north and south through the City of Benton in Franklin county. About a half mile south of the north corporation line of the city, Joplin street crosses the railroad right of way, running east and west. From a distance north of Joplin street south to the depot the railroad consists of two tracks, the main track to the west and the passing

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

track to the east.  These two tracks are about nine feet three inches apart, and the space between them is filled with chat.  For years people living in the northeast part of the city have used this space as a passageway in going to and coming from the depot and the business part of the city.  Along the east side of the right of way from Joplin street on the south is Frisco street.  The first street south of Joplin street extending entirely across the right of way, with a crossing over the railroad tracks, is Burkett street. For about one and one-half miles north of the city limits the track is straight and the view unobstructed. About three o'clock p. m. on August 21, 1915, James Henry Ingram with his father, Theophilus J. Ingram, a man of about seventy-eight years of age, had come from their home located east of the right of way and north of Joplin street.  They came on the right of way at Joplin street and started south about midway between the two tracks, the father slightly in advance of the son.  About the time they came upon the right of way a freight train consisting of fifteen freight cars, an engine and caboose came around the curve one and one-half miles to the north.  At a point about one hundred and seventy-five or two hundred feet south of Joplin street, and when the engine was only twelve to sixty feet away, Theophilus J. Ingram for some reason stepped upon the main track in front of the engine.  Henry J. Ingram attempted to rescue his father and both of them were struck by the engine and killed.  The evidence shows that the engine had whistled some two or three times for crossings and the station since coming around the curve; that the bell had been ringing since crossing Joplin street and that the train was running at a rate of speed estimated by the witnesses to be from twelve to twenty-five miles per hour at the time of the accident.  The city ordinance prohibited a speed of to exceed six

miles per hour. Deceased left a widow but no children. Defendant in error, Anna Ingram, widow and administratrix of the estate of James Henry Ingram, deceased, brought this suit to the September term, 1915, of the Franklin Circuit Court, to recover damages for the death of her husband. The case was tried at the November term, 1915, and resulted in a verdict for $800. A motion for a new trial made by the plaintiff was confessed by the defendant, and a new trial granted. The case was again tried at the May term, 1916, and a verdict returned for plaintiff in the sum of $1,900. After overruling a motion for a new trial and in arrest of judgment, the court entered judgment on this verdict. This writ of error has been prosecuted by the receiver to review that judgment.

The deceased and his father being trespassers upon the railroad right of way, plaintiff in error owed them no duty except to refrain from wantonly and wilfully injuring them, and this rule is the same whether they be considered trespassers or licensees. The duty to exercise ordinary care to avoid injury to trespassers arises only after their presence upon the right of way is shown to have become known to the servants of the railroad company. *Illinois Cent. R. Co. v. Godfrey,* 71 Ill. 500; *Blanchard v. Lake Shore & M. S. Ry. Co.,* 126 Ill. 416; *Illinois Cent. R. Co. v. Noble,* 142 Ill. 578; *Illinois Cent. R. Co. v. O'Connor,* 189 Ill. 559; *Illinois Cent. R. Co. v. Eicher,* 202 Ill. 556. The fact that persons residing in the northeast part of the city had been in the habit of traveling upon the right of way did not change the obligation or duty of the railroad company to such persons traveling thereon for their own convenience. Such persons were still trespassers even though such use was known to the employees of the railroad company. *Illinois Cent. R. Co. v. Godfrey, supra; Illinois Cent. R. Co. v. Hetherington,* 83

Ill. 510; *Cunningham v. St. Louis & W. R. Co.*, 260 Ill. 589.

The evidence shows the plaintiff in error's train at the time of the accident was traveling at a rate of speed from twelve to twenty-five miles per hour, which was in excess of the speed limit fixed by the city ordinance introduced in evidence. While such violation of the speed ordinance was prima facie proof of negligence, yet it was not proof of wantonness or wilfulness, especially when the injury occurred at a place which did not have the appearance of a public crossing. *Blanchard v. Lake Shore & M. S. Ry. Co.*, *supra; Illinois Cent. R. Co. v. O'Connor, supra; Illinois Cent. R. Co. v. Eicher, supra; Thompson v. Cleveland, C., C. & St. L. Ry. Co.*, 226 Ill. 542. Under these authorities there could not be a recovery under the circumstances in proof in this case for the death of Theophilus J. Ingram. Until the attempted rescue, at least, defendant in error's intestate stood in exactly the same relation to plaintiff in error as his father. Consequently it would seem there could be no recovery in this case unless the attempted rescue changed the relation of trespasser or licensee of deceased. Counsel for defendant in error contend such was the effect of the rescue, while counsel for plaintiff in error insist that the attempted rescue would not change the relation unless the person attempted to be rescued had been placed in a position of peril through the negligence of the company. Certain instructions offered by plaintiff in error, three in number, embodying the element that to authorize a recovery in this case the person sought to be rescued must have been placed in a situation of peril through the negligence of the railroad company, were refused, while none of the instructions given on behalf of defendant in error contained this element or recognized this

theory. The ruling of the court upon the instructions as above referred to is said by plaintiff in error to have been particularly erroneous, and this principle of law is thoroughly discussed in the briefs on both sides. Under the authorities above cited as applicable to the facts in this case, it cannot be held that Theophilus J. Ingram had been placed in a position of peril through the negligence of plaintiff in error. Hence, if plaintiff in error's contention is sound, reversible error was committed in passing upon the instructions.

· The doctrine is laid down in 29 Cyc. at page 524 that: "Notwithstanding the fact that an attempt to rescue one from imminent danger may not amount to contributory negligence, no liability rests on defendant unless it has been negligent in placing such person in peril, or in failing to avoid injury after discovering the peril." It has been shown that under the law of this State the father of the deceased was not placed in peril through the failure of plaintiff in error to exercise any duty it owed him, that is through any negligence of plaintiff in error, and the evidence does not show any failure on the part of the servants of plaintiff in error to exercise any duty to avoid the injury after discovering the peril. There was ample room for the deceased and his father to have walked upon the space between the tracks in safety. The witnesses testified the engine was only from ten to sixty feet away when the father stepped upon the track immediately in front of it. The accident occurred in the space between the Joplin street crossing and Burkett street, at a point which did not have any appearance of a public crossing. The trainmen were under no obligations to stop the train even though they saw deceased and his father upon the right of way near the track, as they had a right to presume the parties subsequently injured would re-

main where they were at a safe distance from the track until they manifested a disposition to go upon the same or so near thereto as to be in danger of injury. *Casey v. Chicago & E. I. R. Co.*, 152 Ill. App. 441. It would appear to be the universally recognized law that a person attempting to rescue one imperiled by the negligence of another may, if injured in the attempt, recover from the negligent person if the attempted rescue be not one of recklessness and rashness and the rescuer did not place the imperiled person in danger. But the authorities do not appear to go to the extent of holding that the rescuer can recover regardless of the question whether the danger to the party attempted to be rescued was the result of negligence on the part of the person inflicting the injury or not. In *Norris v. Atlantic Coast Line R. Co.*, 152 N. C. 505, 27 L. R. A. (N. S.) 1069, it was said by the court in discussing this question that: "It is always required, in order to establish responsibility on the part of defendant, that the company should have been in fault."

The instructions given for defendant in error entirely ignored the question whether plaintiff in error was guilty of negligence tending to place the father of deceased in danger, while a number of instructions refused for plaintiff in error, notably the twelfth, fifteenth and twenty-seventh which covered this point, and required proof that the father was in a place of peril in which he had been placed through the negligence of plaintiff in error at the time deceased attempted to rescue him before a recovery could be had, were refused. We are of opinion that the refused instructions offered by plaintiff in error above referred to stated the law correctly and that the court erred in refusing them. In view of what we have above said, we think it unnecessary to review the numerous other

474    APPELLATE COURTS OF ILLINOIS.

McHatton v. Alton, Granite & St. L. T. Co., 206 Ill. App. 474.

alleged errors assigned and discussed by plaintiff in error. But for the errors in regard to the instructions hereinbefore indicated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*