BARBARA SEIBUTIS, Plaintiff-Appellant, *v.* KIRBY SMITH, Defendant-Appellee.—(NICHOLAS T. PASCHALIS *et al.*, Defendants.)

First District (4th Division)    No. 78-1116

Opinion filed May 1, 1980.

Michael W. Rathsack, of Chicago, for appellant.

John J. Bullaro, Jr., of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Barbara Seibutis, filed this action in the circuit court of Cook County against defendants, Kirby Smith, Nicholas T. Paschalis, and Peter J. Hartney, for personal injuries arising out of an automobile accident. Before trial defendants Paschalis and Hartney were dismissed from the suit and the case went to trial against defendant Smith. The jury returned a verdict in favor of Smith, and from the judgment entered on that verdict, the plaintiff appeals.

On appeal, plaintiff contends the trial court committed reversible error by: (1) refusing plaintiff's instruction defining the rescue doctrine; (2) allowing defendant to impeach two of his own witnesses, Paschalis and Hartney, under Supreme Court Rule 238 (Ill. Rev. Stat. 1977, ch. 110A, par. 238); and (3) refusing to grant a mistrial when defendant cross-examined plaintiff as to her father being a lawyer.

We reverse and remand for a new trial.

The evidence discloses that shortly before 1:30 a.m. on July 29, 1973, Nicholas Paschalis was driving southbound on Illinois Route 53 when his car developed engine trouble and stalled in the center lane of the three-lane highway. Paschalis remained in his vehicle and repeatedly tried to restart it. The night was clear and very dark and no street lights were anywhere near the scene of the stall. The testimony presented at trial conflicts as to whether Paschalis left his car lights on or turned them off.

The stall occurred a little more than one-tenth of a mile south of where Route 53 crosses over Kirchoff road. Route 53 rises as it approaches this overpass and then declines on the other side, so that a driver approaching the Paschalis vehicle would first see it when he reached the top of the overpass—assuming Paschalis had left his car lights on.

Plaintiff's first witness was defendant Smith, who testified as an adverse party under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). He said that at 1:30 a.m. he was driving south on Route 53 in the center lane approaching the Kirchoff Road overpass at a speed of 60 miles per hour in a 65-mile-per-hour zone. His lights were on low beam. With him was one passenger, Thomas Murphy. Smith said he had been following another car driven by Kathleen O'Donnell, a friend. Smith lost sight of her car just prior to reaching the overpass. Shortly after Smith crossed the overpass he saw a "reflection" off the tail-lights of the Paschalis vehicle and realizing it was stalled he immediately attempted to turn into the right lane. As he did so he saw a woman, whom he believed to be O'Donnell, standing in that lane. He quickly turned back into the center lane, applied his brakes, and then collided with the rear of the

Paschalis vehicle. Both Smith and Murphy were injured in the collision, but not too seriously. The trial record does not indicate if Paschalis was harmed. Smith said he immediately got out of his car and went to seek help. Murphy stayed in the car.

Craig Scofield, called by plaintiff, testified that just prior to the accident he was entering Route 53 from the Kirchoff Road entrance ramp which merges with Route 53 near where the Paschalis vehicle was stalled. As Scofield traveled along the entrance ramp, he looked over his shoulder and saw two cars at the top of the overpass. When Scofield reached the point of merger, he momentarily saw the Paschalis vehicle and passed to the right of it. He said the Paschalis vehicle's lights were on. After passing the Paschalis vehicle, Scofield again looked over his shoulder and saw the Smith vehicle strike the Paschalis vehicle. At no time did Scofield see anyone standing on the highway. After the collision, Scofield pulled off on the right shoulder of the highway. He said the second car he had seen at the top of the overpass pulled off behind him.

Plaintiff testified that sometime after 1 a.m. on the day of the incident she was driving south on Route 53. She had five passengers in her car. As she reached the overpass over Kirchoff Road, plaintiff saw that an accident had occurred up ahead and she suggested to her passengers that they stop and help. Plaintiff pulled off onto the right shoulder just past the scene of the accident. Plaintiff, with two of her passengers, went up to the driver's side of the Smith vehicle, which was still in the center lane, and there she saw a woman (O'Donnell) standing by the driver's door talking to a passenger (Murphy) who was slumped over in the front seat. At this time plaintiff was standing in the left lane of the highway. Plaintiff then turned to tell one of her companions to go call an ambulance, but before she could do so she was struck by a car. Other testimony showed that the car which struck her was driven by Peter Hartney and that it also struck three other people standing near the Smith vehicle, killing one of them, O'Donnell.

During defendant's presentation of his case, defendant read into the record, in the presence of the jury, the evidence deposition of Hartney. Hartney testified that he was driving south in the center lane on Route 53 at 60 miles per hour when he reached the overpass and saw the tail-lights of one vehicle up ahead. He continued to drive at 60 miles per hour, not realizing that an accident had occurred up ahead until he was 60 feet from the scene of the accident. At that moment he hit his brakes and swerved, but it was too late, and he struck four pedestrians who were standing near the Smith vehicle.

Defendant called Nicholas Paschalis as his own witness. Paschalis testified his car stalled and that while he was attempting to restart it he was struck in the rear. At one point in the direct examination, defense

counsel asked Paschalis if he had turned off his car lights before trying to restart his engine. Paschalis answered that he had left his lights on. At this point defense counsel asked for a conference and one was held in chambers, outside the presence of the jury. In chambers, defense counsel alleged he was surprised by Paschalis' answer. Defense counsel claimed that Paschalis had told a State trooper, after the accident, that he had turned his lights off. Defense counsel then requested that he be allowed to impeach Paschalis as a hostile witness under Supreme Court Rule 238 (Ill. Rev. Stat. 1977, ch. 110A, par. 238). Plaintiff's counsel insisted that defense counsel's claim of surprise was unfounded. The trial record shows that a deposition had been taken of Paschalis prior to trial and that both plaintiff's and defendant's counsel had a copy of this deposition. In his sworn deposition, Paschalis had testified that he had left his lights on. The trial court ruled that Paschalis could be impeached under Rule 238. The trial court did not allow such examination on the basis that the defendant was surprised by the testimony, but instead ruled that impeachment would be allowed because Paschalis had once been a defendant in the case and because Paschalis had a language problem—the record indicates Paschalis sometimes answered questions in broken English, but there is nothing indicating that he misunderstood the questions or was unsure of his manner in answering them.

When the trial continued, defense counsel proceeded to lay his foundation for the impeachment of Paschalis. Defense counsel asked Paschalis if he had told the State trooper his lights were turned off. Paschalis admitted talking to the State trooper but insisted that he had always said his lights were left on.

As his final witness, defendant called State trooper Kochajkiewicz. He testified that after the accident he had been one of the officers dispatched to the scene and that he had taken a statement from Paschalis. He asserted that Paschalis told him that he had turned off his lights when his car stalled.

Based on instructions submitted by plaintiff, the jury was asked to find that defendant Smith was negligent in not avoiding a collision with the Paschalis vehicle, that such negligence created a situation inviting rescue, and that such negligence was the proximate cause of the injuries to the plaintiff who was injured in the attempt to effect a rescue. The jury returned a verdict for defendant, though it found by answer to a special interrogatory that plaintiff was not guilty of contributory negligence.

OPINION

I

Plaintiff contends the trial court committed reversible error by

allowing defendant to impeach his own witness, Paschalis, under Supreme Court Rule 238 (Ill. Rev. Stat. 1977, ch. 110A, par. 238).

Rule 238 provides in part: "The party calling an occurrence witness, upon showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." This part of Rule 238 is one exception to the general rule that a party may not impeach his own witness. (*Martin v. Brennan* (1977), 54 Ill. App. 3d 421, 369 N.E.2d 601; *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 329 N.E.2d 815; *Hall v. Baum Corp.* (1973), 12 Ill. App. 3d 755, 299 N.E.2d 156.) This part of Rule 238 is written in clear, unequivocal language. A party calling an occurrence witness, which Paschalis was in the present case, must show he is surprised by the witness' testimony before the witness may be impeached. One is surprised when one is taken aback unexpectedly and without warning. (Webster's Third New International Dictionary 2301 (1976).) In the present case, the defendant was unable to show surprise. He had in his possession two conflicting statements—a sworn deposition in which Paschalis said his car lights were on and a State trooper's statement, not sworn to by Paschalis, in which Paschalis assertedly told the State trooper that his car lights were off. Defendant cannot claim that Paschalis' trial testimony took him by surprise. Defendant was guessing that when Paschalis took the stand he would refute his sworn deposition, an unlikely prospect, and verify the unsworn statement he had made to the State trooper. Defendant guessed incorrectly. The mere fact that Paschalis gave damaging testimony to the defendant did not bring Paschalis within Rule 238. See *Martin v. Brennan* (1977), 54 Ill. App. 3d 421, 369 N.E.2d 601.

The present case is similar to *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 329 N.E.2d 815. There a party called several witnesses who testified in a manner consistent with their prior sworn testimony given at a previous habeas corpus hearing. The party, alleging surprise, convinced the court to allow him to have the witnesses made court's witnesses so that the party could impeach them with prior unsworn to and inconsistent statements they had made to a private investigator. The court in *Kubisz* declared that the claim of surprise was unfounded. Similarly, in the present case, defendant's claim of surprise was unfounded.

Defendant alleges that because Paschalis was at one time a party to the suit, but had been dismissed before trial, and because Paschalis had a problem with the English language, he should have been allowed to impeach Paschalis. Though these were the reasons given by the trial court for allowing impeachment, we can find nothing in Rule 238 that carves out this special exception the trial court seems to have made. A similar situation arose in *Martin v. Brennan* (1977), 54 Ill. App. 3d 421, 369 N.E.2d 601. There the court held that a party dismissed before trial could not be

called or impeached under Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), which allows for a party to call and impeach an adverse party, nor could such a party be impeached as an occurrence witness under Rule 238 without a showing of surprise.

Accordingly, we conclude the trial court committed error in allowing Paschalis to be impeached under Rule 238.

We also find that the error was prejudicial to plaintiff's rights and that a new trial is mandated. Before the jurors could find that Smith's conduct was the proximate cause of plaintiff's injuries, they, of course, first had to find that Smith's conduct amounted to negligence. As the evidence presented at trial shows, the night was very dark and there were no street lights near the scene of the accident. Thus, if the jurors believed the Paschalis vehicle's lights were off, then they could have concluded that Smith was not negligent in ramming into the Paschalis vehicle because Smith, as a reasonable person, may not have seen the Paschalis vehicle until it was too late to react. If the jurors believed the Paschalis vehicle's lights were on, then they could have concluded that Smith was negligent in ramming into the Paschalis vehicle because Smith, as a reasonable person, may have had sufficient time to react and avoid the collision. Therefore, whether the Paschalis vehicle's lights were on or off was a material factor in the determination of defendant's alleged negligence. If defendant had not been allowed to impeach Paschalis' testimony, he would have been forced to accept Paschalis' allegation that his lights were on, thereby increasing the probability that the jury would believe the lights were on, and he would have been precluded from presenting the State trooper's testimony, which would have been inadmissible hearsay unless offered for the purpose of impeachment.

We cannot underestimate the effect the State trooper's testimony had on the jury, coming as it did at the conclusion of the trial. Thus, necessarily, we find that reversible error was committed and a new trial must be ordered.

## II

Though we find no need to address the remainder of plaintiff's contentions, we do find that we must address two issues raised by defendant in his brief on appeal.

■■ Defendant contends that Illinois courts do not accept any form of the rescue doctrine, upon which plaintiff's claim is based, and that even if they do, plaintiff could not have been a rescuer as a matter of law. We find no merit to defendant's contentions.

A rescuer is someone who voluntarily attempts to save the life or secure the safety of another who is in a position of peril. (See *Jurney v. Lubeznik* (1966), 72 Ill. App. 2d 117, 218 N.E.2d 799.) Often, when a

rescuer comes to the aid of another, the rescuer knowingly subjects himself to imminent peril. Because of this and because of the public policy interests in promoting rescue, the rescue doctrine was long ago recognized and established. The rescue doctrine arises when a plaintiff brings an action based on negligence against a defendant whose negligence has placed a third party in a position of peril. If plaintiff is injured in the attempt to rescue that third party, then he is allowed to negate a presumption that his intentional act of rescue is the superseding cause of his injuries, thereby allowing him to prove that defendant's negligence is the proximate cause of his injuries. (See *Smith v. Chicago City Ry. Co.* (1912), 169 Ill. App. 570.) Additionally, he is allowed to negate a presumption that he is guilty of contributory negligence by the mere act of voluntarily assuming a known risk of harm, unless the act be rash or reckless. *Devine v. Pfaelzer* (1917), 277 Ill. 255, 115 N.E. 126; *West Chicago St. R.R. Co. v. Liderman* (1900), 187 Ill. 463, 58 N.E. 367; *Ingram v. Jackson* (1917), 206 Ill. App. 466; *White v. City of Chicago* (1905), 120 Ill. App. 607.

Other jurisdictions have extended the principle of the rescue doctrine to allow a rescuer to bring an action based on negligence against a defendant whose carelessness has placed himself in danger when the rescuer is injured in the attempt to rescue that defendant. (*E.g., Provenzo v. Sam* (1968), 23 N.Y.2d 256, 296 N.Y.S.2d 322, 244 N.E.2d 26; *Brugh v. Bigelow* (1944), 310 Mich. 74, 16 N.W.2d 668; See Annot., 4 A.L.R.3d 558 (1965), and cases cited therein.) The Illinois courts have not yet had an opportunity to consider this extension of the rescue doctrine, and the facts in the present case do not require our consideration of the issue. However, in his brief on appeal, defendant appears to assert that since the Illinois courts have not yet made this extension, and since our courts have not made an explicit ruling on any part of the rescue doctrine since 1917 (*see Devine v. Pfaelzer* (1917), 277 Ill. 255, 115 N.E. 126; *Ingram v. Jackson* (1917), 206 Ill. App. 466), then somehow all forms of the rescue doctrine have disappeared and it is no longer a doctrine accepted in this State. The mere failure of the courts to have an opportunity to extend a rule of law, and the mere failure of the courts to make a finding concerning a rule of law for a number of years, does not render a rule of law, once created, nonexistent. Accordingly, we find defendant's contention to be without merit.

■ Defendant's contention that plaintiff could not be a rescuer, as a matter of law, is also incorrect. Since one of the main purposes of the rescue doctrine is to overcome a presumption of contributory negligence on the part of the rescuer who has voluntarily assumed a known risk of harm, then the defendant's actual contention is that plaintiff was guilty of contributory negligence, as a matter of law, by being in the left lane of the

highway when she was struck by the Hartney vehicle. The issue of contributory negligence is usually one of fact for the jury, and a court of review will not rule that one is guilty of contributory negligence, as a matter of law, unless the evidence is so overwhelming that no other reasonable conclusion could be reached. (*Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 382 N.E.2d 587; *Bothun v. Wallace* (1978), 61 Ill. App. 3d 365, 377 N.E.2d 1054.) It logically follows that the same rule should apply to the issue of whether one is a rescuer, and thus free from contributory negligence for voluntarily assuming a known risk of harm. Whether one is a rescuer depends both on the state of mind of the person asserting he was acting as a rescuer and on the facts and circumstances of the individual case that bear out his alleged role of being a rescuer. Our review of the facts and circumstances and the acts of the plaintiff as disclosed in the record before us preclude us from finding that, as a matter of law, plaintiff was not a rescuer.

Accordingly, for the reasons noted, we reverse the judgment of the trial court and remand the cause for a new trial.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.