THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN E. SMITH, Defendant-Appellant.

Fourth District   No. 4—82—0236

Opinion filed March 24, 1983.—Rehearing denied April 12, 1983.

306

WEBBER, P.J., concurring in part and dissenting in part.

Daniel D. Yuhas and Jonathan C. Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Barry, State's Attorney, of Lincoln (Robert J. Biderman and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

Armed robbery at McDonald's.

Jury trial—guilty—nine years.

On appeal, we are faced with questions involving *Miranda* warnings, the prosecutor's examination of two witnesses, and whether those witnesses were *court's* or *hostile*.

*In summa*, we affirm.

Early in the morning on November 19, 1981, an armed robber took approximately $2,600 from the McDonald's restaurant in Lincoln, Illinois. Terry Logan, Greg Williams, and Karen Vale, all of

whom were McDonald's employees, were eyewitnesses to the crime. The robber was masked and did not speak. None of the three were initially able to identify him. Subsequently, however, Logan identified the defendant, Steve Smith—whom Logan had known prior to the robbery—as the perpetrator. Williams also told police that the robber reminded him of his cousin, Steve Smith.

Based upon these statements, the police obtained a search warrant for Smith's residence. After completing the search, Smith was arrested and interviewed by Officers Vonderahe and Coombs of the Lincoln Police Department. The interview began as follows:

> "Q Okay. Steve, I want to talk with you in reference to the armed robbery that took place at McDonalds restaurant on the morning of the 19th. Are you familiar with this?
>
> A Yeah. My cousin Greg was.
>
> Q Okay. But before I do that I must advise you of your rights. Okay? You have a right to remain silent. You do not have to talk to me unless you want to do so. Do you understand that?
>
> A Uh. Chico told me to get my lawyer. Chico said you guys would railroad me.
>
> Q Do you understand that as I gave it to you, Steve?
>
> A Yeah.
>
> Q If you do want to talk to me, I must advise you that whatever you say can and will be used as evidence against you in court. Do you understand that?
>
> A Yeah.
>
> Q You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?
>
> A Uh, yeah. I'd like to do that.
>
> Q Okay. If you want a lawyer and if you're unable to pay for one, a lawyer will be appointed to represent you free of cost. Do you understand that?
>
> A Okay.
>
> Q Do you wish to talk with me at this time without a lawyer being present?
>
> A Yeah and no, uh, I don't know what's what really.
>
> Q Well, you either have to agree to talk to me at this time without a lawyer present and if you do agree to talk with me without a lawyer being present you can stop any time you want to.
>
> A All right. I'll talk to you then.

Q Okay. All you have to do is just tell me I don't want to talk to you anymore and that ends it. Okay?

A Okay."

Smith was then interrogated and admitted foreknowledge of the McDonald's robbery and that he had agreed to dispose of the plunder from the robbery for Terry Logan. Although he recounted in detail how the robbery was to take place, Smith strenuously denied that he was the robber. At one point in his statement, however, the following exchange took place:

"Q I can only tell you this much, Steve. *** [T]he only thing that can help you out now is the truth. Now if you committed the crime along with Logan, all right, you committed it. Then now's the time to straighten it out and the time to say I did it.

A All right. I—all right. I committed it. I knew about the robbery. I knew about it long before it happened. I was gonna get rid of everything. ***."

Smith's motion to suppress these portions of his statement was denied.

On the day of trial, just prior to calling Logan and Williams as witnesses, the State's Attorney moved to have them declared hostile or court's witnesses (apparently using the name interchangeably). In support of his motion, the State's Attorney noted the vacillation in their pretrial statements. The court declared both Logan and Williams to be *hostile* witnesses.

Smith alleges that this ruling, the prosecutor's examination of Logan and Williams at trial, and the denial of his motion to suppress require reversal of his conviction.

We disagree.

### MOTION TO SUPPRESS

Smith's argument for suppression is that under *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, once an accused requests assistance of counsel, the police must cease interrogation until counsel is present or the accused initiates further discussion. Smith contends that he requested counsel, none was provided, and he did not initiate further discussions.

■■ Smith correctly states the holding of *Edwards*, but that case is inapplicable to the fact situation before this court. Smith never made an effective request for counsel so as to invoke the safeguards set forth in *Edwards*. Rather, he merely expressed an *interest* in obtaining counsel during the administration of the *Miranda* warnings

and prior to the beginning of any interrogation. The interrogating officer completed the administration of the warnings and asked if Smith wished to speak without counsel. When Smith expressed some confusion about his rights, Officer Vonderahe explained that if defendant agreed to talk, the interview could be stopped at any time. At this point, Smith agreed to speak.

We find *People v. Krueger* (1980), 82 Ill. 2d 305, 412 N.E.2d 537, controlling. There, defendant initially waived his *Miranda* rights, but later stated, "Maybe I ought to have an attorney." The court held that this was not sufficient to invoke defendant's right to counsel. The facts here are even more compelling. In *Krueger*, defendant was fully aware of his *Miranda* rights and had executed a waiver when he made mention of an attorney. Here, Smith had not even been given the full *Miranda* warnings when he stated that he would like an attorney. Although Smith's statement, taken out of context, appears clear and unequivocal, when it is considered with other statements—as it should be—it is clear that Smith was undecided about exercising his right to counsel.

▮ Clearly, Officer Vonderahe did not consider any such request to have been made. He asked Smith for clarification of his statement. Under *Krueger*, an officer's subjective belief is entitled to some consideration in determining whether a request for counsel has been made. We think the interrogating officers' actions here were reasonable. Smith's statements were not a request for counsel during interrogation. Indeed, interrogation had not begun. There was merely an indecisive inquiry into the right to counsel. When Smith indicated a desire to cease interrogation once it had begun, his wishes were promptly complied with.

No error.

### WITNESSES: COURT'S OR HOSTILE?

▮▮ There was some understandable confusion below between these two concepts. This court recently held that a party seeking to call a witness as a *court's* witness must show that (1) he cannot vouch for the witness' credibility; (2) the testimony will relate to direct issues in the case; and (3) the testimony is necessary to prevent a miscarriage of justice. (*People v. Church* (1981), 102 Ill. App. 3d 155, 429 N.E.2d 577.) In order to have a witness declared a *hostile* witness, it must first be demonstrated that (a) he is an occurrence witness; (b) he is being called in good faith; and (c) the party calling him is surprised by his testimony. (*Church.*) Aside from this, *Church* indicated that the primary distinction between the two concepts is that a hostile witness

may be impeached with prior inconsistent statements, while such impeachment of a court's witness is not permitted.

In view of the supreme court's more recent opinion in *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255, the continuing validity of this latter distinction is doubtful. *Weaver* stated that a court's witness may be impeached with a prior inconsistent statement if he says something which affirmatively damages the party calling him. On the facts before it, the court found no affirmative damage and held impeachment was improper. Here, there was affirmative damage. Logan and Williams both stated that defendant was not the robber.

■ As the issue here is whether the State was properly allowed to impeach Logan and Williams with prior inconsistent statements, we will consider whether a proper foundation for calling Logan and Williams as *either* court's *or* hostile witnesses was presented. In short, we hold that there was a sufficient showing to declare them court's witnesses. Both Logan and Williams had made inconsistent statements prior to trial and it was uncertain how they would testify at trial. It is also readily apparent that their testimony would relate directly to the issues in the case. They were, after all, eyewitnesses to the armed robbery. And, for this same reason, their testimony was necessary to prevent a miscarriage of justice.

The foundation for calling the two as hostile witnesses was not present, however. Logan and Williams were, of course, occurrence witnesses. And there is no allegation that the State acted in bad faith in calling them. But, it could not be said—at least when the court declared Logan and Williams hostile prior to trial—that the State was surprised by their testimony. They had not testified to anything. Nor did any surprise occur when Logan and Williams did testify. Both gave testimony consistent with some prior statements but inconsistent with others. The State may have been disappointed, but it was not surprised. See *Seibutis v. Smith* (1980), 83 Ill. App. 3d 1010, 404 N.E.2d 950.

■■ Thus, it would appear that although the end result achieved in denominating a witness a court's witness or a hostile witness is the same, a difference between the concepts still exists. Declaring someone a court's witness is appropriate when the State has reason, prior to the witness testifying, to doubt his credibility. There is no way to satisfy the foundation requirement for declaring a witness hostile until after the witness has begun to testify. Thus, the trial judge here incorrectly designated Logan and Williams as hostile witnesses, but the error does not require reversal. The State was affirmatively damaged by their testimony and they could be impeached with prior in-

consistent statements in any event. See *Weaver*.

▪▪ ▪ We turn then to the question of whether the manner in which the impeachment of Logan and Williams was carried out was an improper attempt to put the substance of their prior statements before the jury. We agree with Smith that such use of prior inconsistent statements is to be condemned (*People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804), but note that Smith never objected to the form of examination at trial and only raised objections to the examination of Logan in his post-trial motion. Thus, in the absence of plain error, this court will invoke the doctrine of waiver and decline to consider any error. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Baske* (1978), 66 Ill. App. 3d 590, 383 N.E.2d 1322 (dealing with failure to object to the State's failure to perfect impeachment).

We do not believe this error rose to the level of plain error. Primarily, the error was not prejudicial. Smith bases his argument on the fact that in numerous instances, the State's Attorney made reference to a prior statement by Logan or Williams before they had made an inconsistent statement at trial. While this is true, it belies the fact that the prior statements were by and large acknowledged by both witnesses. The examination at the critical points—where Logan and Williams stated that Smith was *not* the robber—was in the proper form. Even where the examination was not in the proper form, little harm was done. The correct approach would have been to ask a leading question and when the witness declined to adopt the suggested answer, impeach him with the prior inconsistent statement (which was the basis for the leading question in the first place). The method adopted by the prosecution ("didn't you say" as opposed to "isn't it true") is certainly not to be encouraged, but we cannot say that it amounts to plain error.

Additionally, there was strong circumstantial evidence against Smith—even without the testimony of Logan and Williams. First, Smith matched the general description given by the third eyewitness; second, he possessed a somewhat uncommon weapon (a chrome-plated .44 magnum revolver) similar to the one used by the robber; third, clothing similar to that Karen Vale described the robber as wearing was found in defendant's possession; and, fourth, evidence tended to establish that Smith possessed some of the proceeds of the robbery. Furthermore, Smith admitted advance knowledge of the robbery and to possession of the proceeds. While he also denied participation in the actual robbery, the jury was not required to believe him.

The evidence in this case was not close, Smith was not prejudiced, and we decline to consider the error in the method by which Logan

and Williams were examined.

Affirmed.

GREEN, J., concurs.

PRESIDING JUSTICE WEBBER, concurring in part and dissenting:

I agree with most of what is said in the principal opinion. There was no violation of *Miranda*, and in view of *Weaver* our opinion in *Church* is of doubtful validity. The entire matter was set to rest by the change in Supreme Court Rule 238 (87 Ill. 2d R. 238), effective April 1, 1982. On whatever theory, impeachment of Logan and Williams was proper.

However, even a casual reading of this record demonstrates that the State's Attorney was not attempting impeachment but was putting the prior out-of-court statements before the jury as substantive evidence. I disagree that this is not plain error.

The theory of impeachment is that of undermining the credibility of the witness through the use of the prior inconsistent statement. It is not intended to place substantive evidence before the jury. *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804.

The State's Attorney appeared little concerned with the testimony of Logan and Williams before the jury; he was primarily concerned with their out-of-court declarations. His examination of them consisted largely of demanding that they affirm or deny these declarations, and in his closing argument he made several references to them and intimated that they were substantive evidence. The State's case was almost entirely circumstantial with the exception of the defendant's own statements. The State's case was strong, but not overwhelming. The defendant's identification came only from Logan and Williams, both of them apparently deeply involved in the crime, and no one ever identified the items seized from the defendant as being those either used or taken in the robbery.

I would reverse and remand for a new trial.