L.C. FOX, Plaintiff-Appellant, v. TRAVIS REALTY COMPANY *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 1—93—0707

Opinion filed April 29, 1994.—Rehearing denied June 1, 1994.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London
(Alvin R. Becker, David N. Baum, and Gary S. Weiss, of counsel), and Ronald
M. Gonsky, Ltd., both of Chicago, for appellant.

Randall L. Smith, of Schoen & Smith, Ltd., of Chicago, for appellees
Travis Realty Company and 63rd & Michigan Venture.

PRESIDING JUSTICE MURRAY delivered the opinion of the
court:

Plaintiff L.C. Fox (Fox) appeals from the trial court's grant of
summary judgment in favor of defendants, Travis Realty Co. (Travis),
63rd & Michigan Venture (Venture), and Hopkins Illinois Elevator
Co. (Hopkins) in a negligence action brought by Fox for injuries he
sustained after falling down an elevator shaft.[1] For reasons that
follow, we reverse the grant of summary judgment and remand for
further proceedings.

_____

[1]We note here that Travis and Venture have also filed a cross-claim
against Hopkins, which is not directly implicated in this appeal.

Because this is an appeal from a summary judgment, we must consider whether the pleadings, affidavits, depositions and record presented to the trial court established any genuine issue of material fact. (*Palomar v. Metropolitan Sanitary District of Greater Chicago* (1992), 225 Ill. App. 3d 182, 587 N.E.2d 1067.) In this case the trial court had before it the deposition testimony of L.C. Fox, Ernest Fields (Fields) and Fatima Griffin (Griffin), the three persons who were involved in the elevator accident which gave rise to the underlying cause of action. According to these depositions, which contradict each other on certain points, the elevator accident transpired as follows.

On August 21, 1989, Fox visited his wife at the Vistra Gardens apartment building located at 6253 South Michigan Avenue. This building is owned by Venture and managed by Travis. The building is serviced by three elevators, which were installed by Hopkins, which was also responsible for maintaining and repairing them.

At about 1:15 p.m. on that day, Fox entered one of the elevators from the tenth floor and pressed the button to go down to the lobby. The elevator, instead, proceeded up to the twenty-third floor where another passenger, Ms. Griffin, boarded. Thereafter the elevator descended and then stopped abruptly between floors.

Realizing that the elevator was stuck, Griffin began pressing the emergency button, causing an alarm bell to sound. Although she continued to press the button for several minutes, no one responded. Fox and Griffin then began to yell for help. Griffin testified that she began to panic because she suffers from claustrophobia and because it was a very warm day, the elevator was not air conditioned and it began to get extremely hot inside the stalled elevator.

After Fox and Griffin had been stuck in the elevator for 20 to 30 minutes, their cries for help were answered by Fields. Fields had been descending the stairs from the sixteenth floor when he heard some screams for help. He entered the hallway of the fourth floor and discovered that an elevator containing two people was stuck between floors.[2] Fields testified that the outer elevator door was already open; Griffin testified that Fox forced open the inner door and Fields forced open the outer door. In any event, once the elevator doors

---

[2] Fields testified that the elevator was stuck between the fourth and fifth floors and that he accessed the stuck elevator from the fourth floor. Griffin and Fox believed that the elevator was stuck between the third and fourth floors.

were opened, Fields attempted to assist Griffin and Fox to exit the elevator.

Fields testified that the floor of the stalled elevator was about chest high on him. Griffin exited first. She sat on the floor of the elevator with her feet dangling over the edge, then she slid down to Fields, assisted by Fox from above. Fields helped her avoid the open elevator shaft underneath the stalled elevator car.

When Fox attempted to exit the elevator, however, there was no one to hold him from above. He lay down on his stomach and, with his feet hanging over the edge, lowered himself down. Fields testified that he tried to hold Fox's arm to guide him but that he was unable to hang on to him. When Fox let go of the elevator floor, his feet missed the floor and he fell into the elevator shaft. Fox was able to break his fall somewhat by grabbing onto the elevator cables. Nevertheless, he fell to the bottom of the elevator shaft and suffered serious injury to his hip and knee.

At the hearing on defendants' summary judgment motion, it was defendants' argument that any alleged negligence on their part was not the proximate cause of Fox's injury. They argued that Fields' efforts and Fox's decision to exit the elevator without competent assistance when there was no imminent danger were the intervening and superseding causes of Fox's injury. Plaintiff's counsel argued that any negligence on the part of Fields or Fox in exiting the elevator should be considered under a comparative negligence scheme, but that any negligence on their part was not a basis for granting summary judgment.

The trial court agreed with defendants, finding that exiting an elevator stalled between floors was an unforeseeable dangerous act which broke the causal connection between defendants and Fox's injury. The court cited *Hamilton v. Atchison, Topeka & Santa Fe Ry. Co.* (1988), 175 Ill. App. 3d 758, 530 N.E.2d 268, as authority for granting summary judgment in favor of defendants.

Now, on appeal, Fox's counsel argues that the trial court erred in ruling, as a matter of law, that the negligence of defendants was not the proximate cause of his injury. He contends that the trial court should have applied an old court concept known as the "rescue doctrine" to this case. According to plaintiff, this doctrine states that any negligence attributable to a rescue attempt does not break the causal chain between defendants' negligence and plaintiff's injury. Fox cites to *Wagner v. International R.R. Co.* (1921), 232 N.Y. 176, 133 N.E. 437, and Prosser's treatise, The Law of Torts (W. Prosser & W. Keeton, The Law of Torts (5th ed. 1984)), for the propositions that

"danger invites rescue" and "whether the rescuer injures himself or the rescued, the original wrongdoer is still liable." Fox distinguishes the *Hamilton* case, relied upon by the trial court, by noting that it does not involve a rescue.

In response, defendants argue that the trial court properly granted summary judgment in their favor. They contend that Fox waived the issue of whether the rescue doctrine applies to this case by failing to raise the matter in the trial court. To the extent that the issue of the rescue doctrine is not waived, defendants argue that it is inapplicable to this case because Fox was not in any imminent danger when he was stuck in the elevator and he could have waited for the elevator to be restarted by building maintenance or for a legitimate rescue by proper authorities.

We reject the arguments of both parties but reverse and remand, finding that the proximate cause of Fox's injuries was an issue of fact that should have been left to a jury to decide.

Defendants recite the standard that to prevail on a claim of negligence a plaintiff must show a duty owed, a breach of that duty, and an injury proximately caused by the breach. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 609 N.E.2d 290.) They argue only that the trial court properly found that any negligence on their part did not proximately cause Fox's injury. We assume, therefore, for the purposes of this appeal that the pleadings sufficiently alleged a duty and breach. Therefore, the only issue before this court is whether the trial court properly granted summary judgment based upon the finding that the actions of Field and Fox were the intervening and superseding proximate cause of Fox's injury. We believe that this question must be answered in the negative, *i.e.*, that it was improper for the trial court to have held that Fox's actions, as a matter of law, negated any negligence attributable to the defendants.

■ The rescue doctrine is inapplicable to this case. The rescue doctrine provides that a rescuer injured in the course of a rescue attempt may bring a cause of action based upon the negligence that gave rise to the rescue, despite the fact that the rescuer placed himself at risk by attempting a rescue. According to this concept, the rescuer's intentional act of rescue may not be deemed the superseding cause of his injury, nor may he be held contributorily negligent *by the mere fact that he assumed a known risk in attempting a rescue.* For strong public policy reasons, this concept has long been followed by Illinois courts. (See *Seibutis v. Smith* (1980), 83 Ill. App. 3d 1010, 404 N.E.2d 950.) Although the concepts engendered by the rescue doctrine may still be viable to allow a rescuer to state a cause of action, the rescue doctrine is inapplicable to this case where it is not the rescuer, but the rescuee who was injured.

■ Furthermore, our Illinois statutory law provides, in *all* actions on account of bodily injury based on negligence, the plaintiff will be barred from recovering damages if the trier of fact finds that the contributory fault of the plaintiff is more than 50% of the proximate cause of the injury. (735 ILCS 5/2—1116 (West 1992).) Thus, even if the rescue doctrine applied, recovery of the plaintiff would be subject to a contributory fault determination.

In this case it is Fox, the rescuee, who was injured. Fox brought a cause of action against defendants for bodily injury alleging that their negligence was the cause of his injury. If, however, Fox's injuries are more than 50% attributable to his own rescue efforts, he shall be barred from recovering. Whether Fox was contributorily negligent is a question of fact for the triers of fact to determine.

The case of *Hamilton v. Atchison, Topeka & Santa Fe Ry. Co.* (1988), 175 Ill. App. 3d 758, 530 N.E.2d 268, relied upon by the trial court in granting summary judgment is clearly distinguishable. In that case the plaintiff's decedent was killed when the driver of the car she was riding in disregarded flashing signals and circumvented railroad crossing gates and then was struck by an oncoming train. In granting summary judgment to the railway company, the court stated:

> "In circumventing the wigwag signal, Gomez violated a statute designed for the protection of human life and property. (Ill. Rev. Stat. 1987, ch. 95$^{1/2}$, par. 11—1201(b).) Such a violation is *prima facie* evidence of negligence. Violation does not constitute negligence *per se*, however, for the evidence of negligence may be rebutted by proof that the party acted reasonably under the circumstances. Whether one acted reasonably is typically a question of fact for the trier of fact, but where the facts are undisputed and reasonable minds could not disagree, the question may be decided as a matter of law." *Hamilton*, 175 Ill. App. 3d at 760.

The *Hamilton* court then went on to enumerate the undisputed facts that led the court to conclude, as a matter of law, that the negligence of the driver of the car was the sole proximate cause of Hamilton's death.

In the present case we believe that reasonable minds could differ on the question of whether Fox acted reasonably in employing self-help to extricate himself from a hot, stuffy elevator that had been stalled for 30 minutes or more. For that reason, we believe that the trial court erred in granting defendants' motions for summary judgment. Consequently, we reverse the trial court's order granting

defendants summary judgment and remand the case to the circuit court for further proceedings.

Reversed and remanded.

GORDON and McNULTY, JJ., concur.